BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Gold King Mine Release in San Juan County, Colorado, on August 5, 2015. | MDL NO.: _____ |

### DEFENDANT ENVIRONMENTAL RESTORATION, LLC'S MOTION TO TRANSFER FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407

Defendant Environmental Restoration, LLC ("ER"), by and through its counsel, Glaser Weil Fink Howard Avchen & Shapiro LLP, respectfully moves this Panel for an Order pursuant to 28 U.S.C. § 1407 transferring *State of Utah v. Environmental Restoration, LLC, et al.*, case no. 17-cv-00866, filed in the United States District Court for the District of Utah, Central Division (the "Utah Action") to the United States District Court for the District of New Mexico for coordinated or consolidated pretrial proceedings before Chief United States District Judge M. Christina Armijo, or such other District Court as this Panel deems appropriate. Chief Judge Armijo is currently presiding over the consolidated actions, *State of New Mexico, on behalf of the New Mexico Environment Department v. United States Environmental Protection Agency, et al.*, case no. 16-cv-00465 (the "New Mexico Action"), and *Navajo Nation v. United States of America, et al.*, case no. 16-cv-00931, in the United States District Court for the District of New Mexico (the "Navajo Nation Action," collectively with the New Mexico Action, the "Consolidated Actions"). Another action, *McDaniel, et al. v. United States*, case no. 17-cv-00710 (the "McDaniel Action"), has also been filed in the United States District Court for the District

1

of New Mexico.[1] The Utah Action, the Consolidated Actions, and the McDaniel Action are referred to herein as the "Pending Actions."

Pursuant to 28 U.S.C. § 1407, ER also moves for an Order transferring all subsequently filed actions involving common questions of fact with the Pending Actions (collectively, the "Gold King Actions") to the District of New Mexico for coordinated or consolidated pretrial proceedings before Chief Judge Armijo, or such other District Court as this Panel deems appropriate.

In support of this Motion, ER states as follows:

1. The Gold King Actions all arise out of the release of allegedly hazardous substances from the Gold King Mine in San Juan County, Colorado ("Gold King"), on August 5, 2015 (the "Release"). The resulting plume of allegedly hazardous substances traveled along the Animas and San Juan Rivers through three states (Colorado, New Mexico and Utah) until it reached Lake Powell, covering approximately 300 miles. Residents of a fourth state (Arizona) may also have been impacted. The same factual allegations underlie the Gold King Actions:[2]

   a. Gold King is one of several hundred abandoned mines located in the San Juan Mountains of Colorado. (Utah Compl.[3] ¶ 15; NN Compl.[4] ¶¶ 5, 36; SNM

---

[1] The McDaniel Action has not been consolidated with the Consolidated Actions yet, but satisfies the prerequisites for consolidation under Fed. R. Civ. P. 42.

[2] The allegations are relied on here to show the similarity of the operative alleged facts and claims for relief. By citing to them, ER does not admit, expressly or tacitly, any of the allegations, and reserves its right to contest such allegations.

[3] "Utah Compl." refers to Plaintiff State of Utah's Complaint filed in the Utah Action (Dkt. 2). A true and correct copy of the Utah Complaint is attached as **Exhibit F** to the Declaration of Peter Sheridan ("Sheridan Declaration"), filed contemporaneously herewith.

[4] "NN Compl." refers to Plaintiff Navajo Nation's Complaint filed in the Navajo Nation Action (Dkt. 1). A true and correct copy of the Navajo Nation Complaint is attached as **Exhibit G** to the Sheridan Declaration.

Compl.[5] ¶ 19.)

b. Gold King began leaking acid mine drainage ("AMD") in the 1990s after Defendant Sunnyside Gold Corporation ("Sunnyside Gold"), with the approval of the State of Colorado, installed two bulkheads in a nearby exploratory tunnel known as the "American Tunnel." (Utah Compl. ¶ 18; NN Compl. ¶¶ 45–47; SNM Compl. ¶¶ 36, 38.) As a result of Sunnyside Gold plugging the American Tunnel, groundwater migrated through natural fractures in the mountainside and backed up inside the Gold King adit, causing the once-dry Gold King to become filled with AMD that leaked out of the mine's collapsed portal. (Utah Compl. ¶ 19; NN Compl. ¶¶ 6, 56; SNM Compl. ¶¶ 50, 60.)

c. The plugging of the American Tunnel and resulting build-up of AMD in Gold King and the nearby Red & Bonita Mine created an environmental risk that both Defendant U.S. Environmental Protection Agency ("EPA") and the Colorado Division of Reclamation, Mining and Safety ("DRMS") sought to address. After its own reclamation projects at Gold King resulted in further collapses, DRMS, in 2014, requested that EPA re-open Gold King's collapsed portal and investigate the AMD. (Utah Compl. ¶¶ 29–31; NN Compl. ¶¶ 66–67; SNM Compl. ¶¶ 64–66, 75.)

d. EPA retained ER as its "Emergency and Rapid Response Services" ("ERRS") contractor and Weston Solutions, Inc. ("Weston") as its "Superfund Technical

---

[5] "SNM Compl." refers to Plaintiff State of New Mexico's Complaint filed in the New Mexico Action (Dkt. 1). A true and correct copy of the State of New Mexico Complaint is attached as **Exhibit H** to the Sheridan Declaration.

3

Assessment and Response Team" ("START") contractor to assist with EPA's reclamation activities at Gold King. (Utah Compl. ¶¶ 32–33; NN Compl. ¶ 67; NN FAC[6] ¶¶ 21, 78; SNM Compl. ¶¶ 15, 107; SNM FAC[7] ¶ 17.)

e. EPA commenced reclamation activities at Gold King in 2014, but temporarily suspended work after seepage appeared. (Utah Compl. ¶¶ 32, 36, 38; NN Compl. ¶ 70; SNM Compl. ¶ 76.)

f. EPA, DRMS, ER and Weston returned to Gold King and resumed reclamation activities in July 2015. (Utah Compl. ¶¶ 38–39; NN Compl. ¶¶ 73–74; SNM Compl. ¶ 81; McDaniel SAC[8] ¶ 36.)

g. While reclamation activities were being performed on August 5, 2015, an accidental release of approximately three (3) million gallons of allegedly contaminated water from Gold King occurred. (Utah Compl. ¶¶ 51, 55–56; NN Compl. ¶¶ 1, 80, 83; SNM Compl. ¶¶ 85–87; McDaniel SAC ¶¶ 31, 43, 47.)

h. The water that was released from Gold King flowed into Cement Creek, which is located at the base of the mountainside. The water formed a yellow plume that traveled downstream to the Animas River, which flowed along its length (while still in Colorado) until it flowed into the San Juan River near

---

[6] "NN FAC" refers to Plaintiff Navajo Nation's proposed First Amended Complaint filed in the Navajo Nation Action (Dkt. 141-1). A true and correct copy of the Navajo Nation's proposed First Amended Complaint is attached as **Exhibit I** to the Sheridan Declaration.

[7] "SNM FAC" refers to Plaintiff State of New Mexico's proposed first Amended Complaint filed in the New Mexico Action (Dkt. 86-1). A true and correct copy of the State of New Mexico's proposed First Amended Complaint is attached as **Exhibit J** to the Sheridan Declaration.

[8] "McDaniel SAC" refers to the Second Amended Complaint filed by Plaintiffs Joanna McDaniel, *et al.*, in the McDaniel Action (Dkt. 6). A true and correct copy of the McDaniel Second Amended Complaint is attached as **Exhibit K** to the Sheridan Declaration.

Farmington, New Mexico. The yellow plume continued to travel downstream for hundreds of miles along the San Juan River through New Mexico, the Navajo Nation, and into Utah, where it flowed into Lake Powell. (Utah Compl. ¶ 57; NN Compl. ¶¶ 83–84; SNM Compl. ¶¶ 1, 87; McDaniel SAC ¶ 31.)

2. At this time, four (4) civil actions in total arising from the Release have been filed by seventeen (17) plaintiffs in two United States District Courts—three (3) civil actions in the District of New Mexico and one (1) civil action in the District of Utah. Three of the seventeen (17) plaintiffs are governmental entities (State of New Mexico, Navajo Nation and State of Utah). Fourteen (14) of the plaintiffs are individuals, who all reside in New Mexico. The State of New Mexico has its seat of government located within the District of New Mexico. And the borders of the Navajo Nation reach into areas within the District of New Mexico. The State of Utah is the only plaintiff that lacks a geographical connection to the District of New Mexico.

3. Given the distance that Plaintiffs allege the plume purportedly traveled (approximately 300 miles) (Utah Compl. ¶ 57; NN Compl. ¶¶ 83–84; SNM Compl. ¶¶ 1, 87; McDaniel SAC ¶ 31), and the national media coverage that the Release has and continues to receive, ER anticipates that additional lawsuits may well be filed relating to the Release. EPA has announced that 144 administrative claims have been filed with the agency by farmers, ranchers, homeowners, businesses, employees, state and local governments, and other individuals seeking damages as a result of the Release. The prospect of additional lawsuits further supports centralization of the Gold King Actions in a single United States District Court for coordinated or consolidated pretrial proceedings. *See In re Air Crash at Georgetown, Guyana, on July 30, 2011*, 895 F. Supp. 2d 1355, 1356–57 (J.P.M.L. 2012) (ordering the transfer

of three (3) actions pending in two (2) U.S. District Courts arising from an airplane crash because, "[a]lthough only three actions are pending, centralization under Section 1407 is more suitable than informal coordination given that these actions arise from the same accident, and the parties' representation that over 100 passengers have retained counsel to pursue unresolved claims"); *In re Industrial Wine Contracts Securities Litig.*, 386 F. Supp. 909, 912 (J.P.M.L. 1975) (ordering the transfer of a single action alleging securities fraud to another U.S. District Court where five (5) related actions were pending because "several tag-along actions" were anticipated and "the institution of Section 1407 proceedings at this time will have the salutary effect of providing a ready forum for the most just and expeditious judicial treatment of any future actions along with the present ones").

4. Plaintiffs have and will continue to assert virtually identical claims against defendants in the Gold King Actions. Plaintiffs allege that the defendants in the Gold King Actions are liable because defendants contributed to the conditions that created a threat of a release from Gold King and/or triggered the Release while working on the EPA-led reclamation project. All plaintiffs in the Gold King Actions allege that they incurred property and economic damages as a result of the alleged contamination of the San Juan River. Three of the Gold King Actions have been brought by government entities (State of New Mexico, Navajo Nation and State of Utah) and, in addition to compensatory damages under state tort law, the government entities are seeking clean-up costs and natural resource damages under CERCLA.

5. Defendants will be relying on largely the same sets of facts to establish their defenses in each of the Gold King Actions. In every Gold King Action, ER will rely on substantially the same sets of facts, regardless of where the plaintiffs reside or bring suit. By way of example only, ER will offer evidence to establish that it is, *inter alia*: (i) immune from state

law liability based on the federal "Government Contractor Defense"; (ii) protected from state law liability under the well-established common law contractor defense; (iii) not jointly and severally liable with any other defendant because Gold King (the point source) is located in Colorado and, therefore, Colorado state law should apply, which bars joint and several liability; (iv) not liable under CERCLA because it was neither an "owner," "operator," "arranger" nor "transporter" under the statute; (v) not liable under CERCLA because it acted "at the direction of an on-scene coordinator" and did not act negligently, *see* 42 U.S.C. § 9607(d)(1); and (vi) not liable under CERCLA because it was a "response action contractor" under CERCLA and did not act negligently, *see* 42 U.S.C. § 9619(a)(1).

6. Transferring all Gold King Actions to a single U.S. District Court would be convenient for parties and witnesses, and would promote just and efficient conduct of all actions, because it would avoid duplicative discovery, prevent inconsistent pretrial rulings and conserve judicial resources. The same witnesses with knowledge of the events that occurred prior to, at the time of, and after the Release will need to be deposed in the Gold King Actions, including but not limited to, (i) the EPA on-scene coordinators who directed reclamation activities at Gold King, (ii) other EPA employees who were involved in EPA's reclamation activities at Gold King and post-Release response, (iii) the DRMS employees who routinely visited Gold King and consulted EPA about the ongoing reclamation activities, (iv) the DRMS employees who worked on the agency's prior reclamation efforts in 2008 and 2009 and/or have knowledge about the conditions inside the Gold King adit, and (v) the government contractor employees who worked at Gold King. Plaintiffs in the Gold King Actions will likely request identical documents from defendants relating to, *inter alia*, the work that was performed at Gold King and the conditions inside the Gold King adit, and any resulting discovery disputes likely would involve identical

issues. The discovery in the Gold King Actions will not only overlap, but also will involve complex factual questions. Extensive expert discovery will need to be conducted in each of the Gold King Actions to address, among other issues: (i) the propriety of the alleged activities at Gold King; (ii) the hydrology of the area into which the release from Gold King occurred; (iii) the geochemistry of the plume that migrated through the Animas and San Juan Rivers; (iv) whether the Release had any impact on the water quality of the Animas and San Juan Rivers and, if so, the degree of such impact; (v) alternative causes of any contamination of the Animas and San Juan Rivers; and (vi) if any of the defendants are found liable and if any contamination exists, what remediation steps to take beyond what EPA already has underway.

7. There would be an untenable risk of inconsistent pretrial rulings if the Gold King Actions are not transferred to a single U.S. District Court. An MDL would also conserve judicial resources because multiple District Judges would not have to hear and decide these same legal issues in multiple actions. The Gold King Actions will involve the same legal issues in advance of trial and will involve the same discovery, and it would be preferable to have a single District Judge deciding such legal issues and resolving any discovery disputes. Defendants have and will continue to raise arguments that apply equally to all Gold King Actions, and different U.S. District Courts might reach different conclusions about these common issues. Many of these common issues implicate the parties' legal rights and the scope of defendants' potential liability, while other common issues could be dispositive of plaintiffs' claims. By way of example only, the District of New Mexico and District of Utah might reach different conclusions about: (i) the "Government Contractor Defense"; (ii) certain defendants' status as a potentially responsible party under CERCLA; (iii) whether EPA's initiation of removal work at areas potentially affected by the Release has stripped federal courts of jurisdiction under 42 U.S.C. § 9613(h);

(iv) whether CERCLA preempts the government plaintiffs' claims for unrestricted monetary damages under state law; (v) which state's laws govern plaintiffs' common law tort claims; and (vi) whether defendants could be held jointly and severally liable. Indeed, ER initially raised these issues in the Consolidated Actions over a year ago when ER moved to dismiss and to strike portions of the State of New Mexico's complaint. ER raised identical issues in its motion to dismiss and to strike portions of Navajo Nation's complaint, and in its oppositions to State of New Mexico and Navajo Nation's motions for leave to amend their complaints. These motions remain pending in the Consolidated Actions, and ER intends to raise the same issues in an anticipated motion to dismiss and motion to strike portions of the State of Utah's complaint. Accordingly, if these issues are decided by different courts in different jurisdictions, then there is a real and imminent danger of conflicting rulings on these critical legal issues that are involved in all of the Gold King Actions.

8.  The Judicial Panel has routinely transferred actions arising from the same accident to a single United States District Court for coordinated or consolidated pretrial proceedings before a single District Judge because, perforce, the actions arising from each accident involved overlapping factual issues much like those that will overlap here. *See, e.g.*, *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F. Supp. 2d 1352, 1354 (J.P.M.L. 2010) (ordering actions arising from the Deepwater Horizon explosion to be transferred to a single U.S. District Court because the actions "indisputably share factual issues concerning the cause (or causes) of the Deepwater Horizon explosion/fire and the role, if any, that each defendant played in it"); *In re Air Crash over the Southern Indian Ocean, on March 8, 2014*, 190 F. Supp. 3d 1358, 1359 (J.P.M.L. 2016) (ordering actions arising from the disappearance and presumed loss of Malaysia Airlines Flight MH370 to be transferred to a

single U.S. District Court because "[a]ll of the actions will involve similar, if not identical, factual inquiries regarding the cause or causes of the loss of Flight MH370"); *In re Amtrak Train Derailment in Philadelphia, Pennsylvania, on May 12, 2015*, 140 F. Supp. 3d 1347, 1348 (J.P.M.L. 2015) (ordering actions arising from a train derailment to be transferred to a single U.S. District Court because "[c]entralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary"); *In re Air Crash at San Francisco, California, on July 6, 2013*, 987 F. Supp. 2d 1378, 1379 (J.P.M.L. 2013) (ordering actions arising from an airplane crash because "[a]ll actions share factual questions regarding the cause or causes of the crash").

9. The Judicial Panel should order that the Utah Action and all future Gold King Actions be transferred to the District of New Mexico. In selecting a particular transferee court under § 1407, the Judicial Panel considers several factors, including "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIGATION § 20.131 (4th ed. 2004). These factors favor transferring the Utah Action and all future Gold King Actions to the District of New Mexico.

    a. Three of the four cases arising from the Release are currently pending in the District of New Mexico.

    b. The Consolidated Actions have progressed further than the Utah Action. All of the defendants in the Consolidated Actions in the District of New Mexico have filed motions to dismiss that have been fully briefed by the parties and are awaiting decision by the District Court. In addition, limited discovery has

already been conducted in the Consolidated Actions. The District Court in the Consolidated Actions ordered further discovery and briefing on defendants' arguments that the Court lacks jurisdiction over certain claims under 42 U.S.C. § 9613(h).

    c. The Release (and the work leading up to the Release) occurred in San Juan County, Colorado, which is closer to Albuquerque, New Mexico, than Salt Lake City, Utah. Among the cities and towns affected by the Release, the city with the highest population is Farmington, New Mexico, which has a population of 45,000. In addition to Farmington, the plume from the Release also traveled near Aztec, Kirtland, Waterflow and Shiprock, New Mexico.

    d. The District of New Mexico has the capacity to manage an MDL relating to the Release. That District Court has seven active district judges, two senior district judges, six visiting district judges, and ten magistrate judges. Further, there is already an MDL pending in the District of New Mexico (*In re Santa Fe Natural Tobacco Company Marketing and Sales Practices Litigation*, MDL No. 2695), thus the District of New Mexico has proven that it possesses the resources and expertise to host an MDL. *See* MDL Statistics Report, dated November 15, 2017 (attached to the Sheridan Declaration as **Exhibit L**).

10. As for the individual District Judge to whom the MDL should be assigned, the Judicial Panel should consider assigning the Gold King Actions to Chief Judge M. Christina Armijo. Chief Judge Armijo has already been assigned two cases relating to the Release that have been filed in the District of New Mexico. It is anticipated that additional cases relating to the Release may be filed in the District of New Mexico. These future Gold King Actions will

likely satisfy the prerequisites under Fed. R. Civ. 42 for consolidation with the Consolidated Actions that are currently before Chief Judge Armijo. In addition, Chief Judge Armijo is a well-respected District Judge who has experience handling complex cases involving allegedly hazardous substances, including *Chevron Mining, Inc. v. United States*, case no. 13-cv-00328. Chief Judge Armijo is an appropriate choice for supervising the MDL process for these and other cases as and when they are filed.

11. ER has met and conferred with the defendants in the Utah Action and with the U.S. Environmental Protection Agency, and such parties do not oppose transferring the Utah Action to the United States District Court for the District of New Mexico for coordinated or consolidated pretrial proceedings with the Consolidated Actions.

12. In support of this Motion, ER has filed contemporaneously herewith the Sheridan Declaration, which attaches (i) as **Exhibit A**, a numbered schedule providing the complete name of each action involved in the Motion, the district court and division where each action is pending, the civil action number of each action, and the name of the judge assigned to each action (the "Schedule"), (ii) as **Exhibits B–E**, a copy of all docket sheets for all actions listed on the Schedule, and (ii) as **Exhibits F–K**, a copy of all complaints for all actions listed on the Schedule.

13. ER incorporates by reference the arguments and authorities set forth in its accompanying brief, which is being filed contemporaneously herewith.

WHEREFORE, ER respectfully requests that the Judicial Panel issue an Order under 28 U.S.C. § 1407 ordering the transfer of all current and future actions related to the Gold King Release on August 5, 2015, to the District of New Mexico, to be assigned to Chief Judge M. Christina Armijo, or such other District Court, for coordinated and consolidated pretrial proceedings.

Respectfully submitted,

GLASER WEIL FINK HOWARD
 AVCHEN & SHAPIRO LLP

By:/s/ Terry D. Avchen
   Terry D. Avchen
   Peter C. Sheridan
   Andriy R. Pazuniak
   10250 Constellation Blvd., 19th Fl.
   Los Angeles, California 90067
   Telephone: (310) 553-3000
   Email: tavchen@glaserweil.com
   Email: psheridan@glaserweil.com
   Email: apazuniak@glaserweil.com

*Attorneys for Defendant Environmental Restoration, LLC*

DATED:  December 11, 2017