Craig D. Galli, #5072
Steven G. Jones, #15063
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT  84101
Telephone:  (801) 799-5842
Fax: (801) 799-5700

Bradford C. Berge *Admitted Pro Hac Vice*
HOLLAND & HART LLP
P.O. Box 2208
Santa Fe, NM 87504-2208
Telephone: (505) 988-4421
Fax: (505) 983-6043

Jill H. Van Noord *Admitted Pro Hac Vice*
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8378
Fax: (303) 416-8719

*Attorneys for Defendants Kinross Gold
Corporation and Kinross Gold U.S.A., Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE STATE OF UTAH, | **DEFENDANTS KINROSS GOLD CORPORATION'S AND KINROSS GOLD U.S.A. INC.'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM** |
| Plaintiff, | |
| vs. | |
| ENVIRONMENTAL RESTORATION, LLC; HARRISON WESTERN CORPORATION; KINROSS GOLD CORPORATION; KINROSS GOLD U.S.A., INC.; SUNNYSIDE GOLD CORPORATION; and GOLD KING MINES CORPORATION, | Case No. 2:17-cv-00866-BCW |
| Defendants. | Magistrate Judge Brooke C. Wells |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 2

    A.   Jurisdictional Facts.......................................................................................... 2

         1.   Defendant Kinross Gold Corporation .................................................. 2

         2.   Defendant Kinross Gold U.S.A., Inc. .................................................. 2

    B.   Procedural History ........................................................................................... 2

         1.   State of Utah Complaint....................................................................... 2

         2.   Parallel Litigation................................................................................. 3

    C.   CERCLA Statutory Background....................................................................... 4

    D.   EPA's Ongoing CERCLA Response Action ................................................... 5

III.   ARGUMENT............................................................................................................ 7

    A.   The State's Complaint Against KGC and KGUSA Should be Dismissed Pursuant to FRCP 12(b)(2) for Lack of Personal Jurisdiction ............................................. 7

         1.   There is No General Jurisdiction .......................................................... 8

         2.   The Complaint Lacks Allegations Sufficient to Support the Court's Exercise of Specific Jurisdiction Over Either KGC or KGUSA ............................... 9

    B.   The State Fails to State a Claim Against KGC and KGUSA for Liability as CERCLA Owners, Operators or Arrangers ...................................................................... 12

         1.   The State Has Failed to State a Claim Against Either KGC or KGUSA Based on CERCLA Owner Liability ..................................................................... 12

         2.   The State Has Failed to State a Claim Against Either KGUSA or KGC Based on CERCLA "Operator" Liability ............................................................... 14

         3.   The State Has Failed to State a Claim Against Either KGUSA or KGC Based on CERCLA "Arranger" Liability ............................................................... 16

    C.   CERCLA § 113(h) Bars the Court From Considering the State's Claims ................... 17

         1.   EPA Has Undertaken a CERCLA Response Action ............................. 17

         2.   Because EPA is Proceeding with a CERCLA Response, the Court is Divested of Jurisdiction to Consider Challenges to That Action ................................. 18

         3.   The State's Common Law Claims Are Also Barred............................... 21

IV.   CONCLUSION........................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alabama v. United States Envt'l Prot. Agency,*
   871 F.2d 1548 (11th Cir. 1989) ........................................................19

*American Fidelity Assur. Co. v. Bank of New York Mellon,*
   810 F.3d 1234 (10th Cir. 2016) ..........................................................9

*Appleton Papers Inc. v. George A. Whiting Paper Co.,*
   901 F. Supp.2d 1113 (E.D. Wis. 2012) .............................................21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...........................................................................16

*Becker v. Angle,*
   165 F.2d 140 (10th Cir. 1947) ...........................................................11

*Bell Atlantic v. Twombly,*
   550 U.S. 544 (2007) ...........................................................................16

*BNSF Railway Co. v. Tyrrell,*
   137 S. Ct. 1549 (2017) .........................................................................8

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,*
   __ U.S. __, 137 S. Ct. 1773 (2017) ...............................................9, 10

*Brokers' Choice of America, Inc. v. NBC Universal, Inc.,*
   861 F.3d 1081 (10th Cir. 2017) ...........................................................5

*Brooks v. Gaenzle,*
   614 F.3d 1213 (10th Cir. 2010) .........................................................17

*Broward Gardens Tenants Ass'n v. U.S. EPA,*
   311 F.3d 1066 (11th Cir. 2002) ...........................................................5

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ...................................................................7, 8, 10

*Buckhannon v. Monarch Life Ins. Co.,* 46 F.3d 1150 (10th Cir. 1995) ........................................11

*Cannon v. Gates,*
   538 F.3d 1327 (10th Cir. 2008) ...............................................19, 20, 21

*Cannon v. Gates,*
   No. 2:05-cv-00922, slip op. (D. Utah April 4, 2007)...........................20

*Carter v. Seerus, Inc.*,
  2017 WL 2838141 (D. Utah, June 30, 2017)...........................................................5

*Chevron Mining Inc. v. United States*,
  863 F.3d 1261 (10th Cir. 2017) ................................................................4, 12

*Clements v. Tomball Ford, Inc.*,
  812 F. Supp. 202 (D. Utah 1993)...........................................................11

*Commander Oil Corp. v. Barlo Equipment Corp.*,
  215 F.3d 321 (2d Cir. 2000).....................................................................13

*Daimler AG v. Bauman*,
  571 U.S. __, 134 S. Ct. 746 (2014)..........................................................9, 10

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ..............................................................10

*Exxon Mobil Corp. v. United States*,
  108 F. Supp. 3d 486 (S.D. Tex. 2015) ..................................................15

*Giovanni v. United State Dep't of the Navy*,
  2017 WL 2880749 (E.D. Pa. July 6, 2017)...........................................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)...........................................................................8

*Hodgsen v. Farmington City*,
  675 Fed. Appx 838 (10th Cir. January 10, 2017) ..............................6

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)...........................................................................8

*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*,
  205 F.3d 1244 (10th Cir. 2000) ............................................................8

*Jacobsen v. Deseret Book Co.*,
  287 F.3d 936 (10th Cir. 2002) ..............................................................5

*McClellan Ecological Seepage Situation v. Perry*,
  47 F.3d 325 (9th Cir. 1995) ............................................................4, 18, 19

*Navajo Nation v. United States of America, et al.*,
  District of New Mexico Case No. 1:16-cv-00931-MCA-LF ....................3

*New Mexico v. Gen. Elec. Co.*,
  467 F.3d 1223 (10th Cir. 2006) ............................................................ *passim*

*Northern States Power Company v. City of Ashland*,
    93 F. Supp. 3d 958 (W.D. Wis. 2015) .................................................................................13

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*,
    149 F.3d 1086 (10th Cir. 1998) ...............................................................................10, 11

*Pytlik v. Professional Resources, Ltd.*,
    887 F.2d 1371 (10th Cir. 1995) (quoted with approval in *Buckhannon v.*
    *Monarch Life Ins. Co.*, 46 F.3d 1150, 1995 WL 43593, * 2 (10th Cir. 1995)) ......................11

*Raytheon Constructors, Inc. v. Asarco Inc.*,
    368 F.3d 1214 (10th Cir. 2003) ...............................................................................15, 16

*Redland Soccer Club v. Dep't of Army*,
    801 F. Supp. 1432 (M.D. Pa. 1992).......................................................................................21

*Schalk v. Reilly*,
    900 F.2d 1091 (9th Cir. 1990) ...............................................................................19, 20

*Shipp v. Intl. Auto Group of S. Florida, Inc.*,
    2016 WL 3951079 (D. Utah, July 20, 2016) ........................................................................10

*Shrader v. Biddinger*,
    633 F.3d 1235 (10th Cir. 2011) .............................................................................................10

*St. Louis Baptist Temple, Inc. v. F.D.I.C.*,
    605 F.2d 1169 (10th Cir. 1979) ...............................................................................................6

*State of N.Y. v. Solvent Chemical Co., Inc.*,
    880 F. Supp. 139 (W.D.N.Y. 1995).......................................................................................13

*State of New Mexico, on behalf of the New Mexico Environment Department v.*
    *United States Environmental Protection Agency, et al.*,
    District of New Mexico Case No. 1:16-cv-00465-MCA-LF ....................................................3

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ...............................................................................................6

*TH Agriculture & Nutrition, LLC. v. Ace European Group Ltd*,
    488 F.3d 1282 (10th Cir. 2007) ...............................................................................................8

*U.S. v. State of Colorado*,
    990 F.2d 1565 (10th Cir. 1993) .............................................................................................19

*United States v. Ahidley*,
    486 F.3d 1184 (10th Cir. 2007) ...............................................................................................6

*United States v. Bestfoods,*
   524 U.S. 51 (1998)..................................................................................14, 15

*World–Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980)...........................................................................................7

## **Statutes**

28 U.S.C. § 1367(c)(3).........................................................................................17

42 U.S.C. § 9601(23)..............................................................................................4

42 U.S.C. § 9601(24)..............................................................................................4

42 U.S.C. § 9604(a)................................................................................................4

42 U.S.C. § 9607...................................................................................................17

42 U.S.C. § 9607(a)..........................................................................................4, 16

42 U.S.C. § 9607(a)(3).........................................................................................16

42 U.S.C. § 9613...................................................................................................19

42 U.S.C. § 9613(g)(2)..........................................................................................17

42 U.S.C. § 9613(h)....................................................................................5, 19, 20

42 U.S.C. § 9613(h)(1)............................................................................................5

CERCLA § 104.....................................................................................................19

CERCLA § 107.......................................................................................................5

CERCLA § 107(a)............................................................................................4, 17

CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2)....................................................12

CERCLA § 113(h)........................................................................................ *passim*

CERCLA § 113(h)................................................................................................23

CERCLA § 113(h)(1)............................................................................................17

Comprehensive Environmental Response, Compensation, and Liability Act
   ("CERCLA")........................................................................................... *passim*

Utah Solid and Hazardous Waste Act...................................................................21

Utah Water Quality Act ...........................................................................................21

## **Other Authorities**

40 C.F.R. Part 300................................................................................4, 7, 11

1986 U.S.C. Conf. & Admin. News 2835, 3317 ........................................19

FRCP 12(b)(2) ..........................................................................................7

FRCP 12(b)(6) ..........................................................................................6

H. Conf. Rep. No. 962, 99th Cong., 2nd Sess. 224 ...................................19

H.R. Rep. No. 99-253(I), reprinted in 1986 U.S.C.C.A.N. 2835..................20

Pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) and (6), Defendants Kinross Gold Corporation ("KGC") and Kinross Gold U.S.A., Inc. ("KGUSA"), through their attorneys, Holland & Hart LLP, respectfully request that the Court dismiss all claims asserted against them by Plaintiff State of Utah ("the State").

## I.      INTRODUCTION

This case addresses wastewater that was discharged in August 2015 from a former gold mine near Silverton, Colorado, when the Environmental Protection Agency ("EPA") and contractors working on EPA's behalf breached an entrance into the Gold King Mine, causing a release of hazardous substances into the Animas River in southwestern Colorado.  The State claims that the discharge caused damage to the San Juan River and Lake Powell, and that KGUSA, KGC and other defendants are strictly liable for that damage under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as well as pursuant to state law negligence, nuisance and trespass claims associated with the release.

Because KGC and KGUSA have no connection to Utah, this Court has no jurisdiction over them.  Moreover, the State's cost recovery claim fails to state a claim against KGC and KGUSA because the Complaint fails to allege facts that would establish, even if true, that KGC and KGUSA were owners, operators or arrangers under CERCLA.  Moreover, CERCLA bars the State's challenges to the cleanup currently underway.  Accordingly, the State's claims against KGC and KGUSA must be dismissed because:

A.      this Court lacks personal jurisdiction over either KGC or KGUSA;

B.      the State fails to allege facts supporting that either KGC or KGUSA is or was an owner, operator or arranger under CERCLA; and

   C.     CERCLA § 113(h) prohibits challenges to removal and remedial actions
          undertaken by EPA until after EPA's response action has been completed, and
          this case constitutes such a challenge.

## II.     BACKGROUND

### A.     Jurisdictional Facts

#### 1.     Defendant Kinross Gold Corporation

KGC is a Canadian corporation and its principal place of business is in Toronto.

Complaint ¶ 10.  KGC does not do business in Utah, is not licensed to do business in Utah, does

not have a registered agent in Utah and does not own, lease or maintain any property in Utah.

KGC does not have any employees in Utah, and does not pay taxes in Utah.  *Declaration of*

*Kathleen M. Grandy* ("Grandy Dec."), ¶¶ 4-8.

#### 2.     Defendant Kinross Gold U.S.A., Inc.

KGUSA is a Nevada corporation with its principal place of business in Colorado.

Complaint ¶ 11.  Although it is registered in Utah as a foreign corporation, KGUSA does not do

business in Utah, and it has no Utah business licenses.  KGUSA historically held a handful of

mining claims and leases in Beaver County, Utah, but does not currently own, lease or maintain

property in Utah, nor does it maintain any offices or operations in Utah, and is not licensed to do

business in Utah.  Other than one employee, who is assigned to KGUSA's office in Denver, but

resides in Utah and works remotely from Utah from time to time, KGUSA has no employees in

Utah.  *Declaration of Martin D. Litt* ("Litt Dec."), ¶¶ 4-7.

### B.     Procedural History

#### 1.     State of Utah Complaint

On July 31, 2017, the State filed its Complaint alleging that EPA and its contractors

"negligently breached an entrance into the Gold King Mine, causing a blowout with

approximately three million gallons of toxic waste spilling into the Animas River in

southwestern Colorado" (the "Blowout").  Complaint (Dkt. No. 2) ¶¶ 1, 39-58.  The State alleges

that KGUSA, KGC and other parties are "strictly liable and/or negligent" for "creating the

conditions leading to the Blowout," *id.* ¶ 3, and that the releases from the August 5, 2015

Blowout and past and present releases from the Sunnyside Mine have contributed to the

contamination of the San Juan River and Lake Powell within the State of Utah.  *Id*. ¶ 68.  The

State further alleges that KGUSA and KGC are "owners or operators" of the Sunnyside Mine

within the meaning of CERCLA's liability provisions and that they "controlled and directed"

SGC's activities at the Sunnyside Mine.  *Id.* ¶¶ 21, 61.  Notably, as the State acknowledges,

KGC acquired its indirect interest in SGC in 2003, *after* the activities undertaken by SGC that

are at issue in this case had taken place.  *Id.* ¶¶ 16-21.

### 2.    Parallel Litigation

With the exception of the Plaintiff, State of Utah, all of the other parties in this case are

also parties in consolidated cases currently pending in the United States District Court for the

District of New Mexico:  *State of New Mexico, on behalf of the New Mexico Environment*

*Department v. United States Environmental Protection Agency, et al.*, District of New Mexico

Case No. 1:16-cv-00465-MCA-LF and *Navajo Nation v. United States of America, et al.*, District

of New Mexico Case No. 1:16-cv-00931-MCA-LF.  *See Declaration of Steven G. Jones* ("Jones

Dec."), ¶ 2.  Like the State of Utah's claims in this case, the claims in the consolidated New

Mexico cases arose out of the August 5, 2015 Blowout at the Gold King Mine.  The Honorable

Christina Armijo, Chief Judge of the District of New Mexico, is presiding over those

consolidated cases, and the Honorable Laura Fashing is assigned as the Magistrate Judge in those

cases.  *Id.*

C.        **CERCLA Statutory Background**

Liability Under CERCLA.  CERCLA § 107(a) lists four broad categories of potentially

responsible persons ("PRPs") that may be liable to other persons for various costs.  The

categories of PRPs broadly include current and former owners and operators of a facility

involved in hazardous substance disposal and persons who arranged for or accepted hazardous

substances for disposal or transportation.  42 U.S.C. § 9607(a); *see generally Chevron Mining*

*Inc. v. United States*, 863 F.3d 1261, 1270 (10th Cir. 2017).

EPA Response Action Authority.  Section 104(a) of CERCLA authorizes "response

actions" when a hazardous substance is released into the environment.  42 U.S.C. § 9604(a).

CERCLA defines such response actions to include both removal and remedial actions.

"Removal" actions include a wide scope of activities, including investigation and assessment of

the release.  42 U.S.C. § 9601(23).  "Remedial" actions are actions consistent with a permanent

remedy.  *Id*. § 9601(24).  For remedial actions, the CERCLA cleanup process follows a well-

defined course from the investigation phase to identification of potential remedies, to selection of

the remedy, to cleanup under the approved remedial action plan.  This process is dictated by the

guidelines of the National Contingency Plan.  *See generally* 40 C.F.R. Part 300.

CERCLA § 113(h) Bar on Challenges to Response Actions.  Congress protected

CERCLA response actions from lawsuits challenging those actions or which otherwise "might

interfere with the expeditious cleanup effort."  *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223,

1249 (10th Cir. 2006) (quoting *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325,

329 (9th Cir. 1995)).  Congress accomplished this through CERCLA § 113(h), which provides

that:  "No Federal court shall have jurisdiction under Federal law ... to review any challenges to

removal or remedial action selected under section [104 of CERCLA], in any action except one of

4

the following [exceptions]."[1]  42 U.S.C. § 9613(h).  "A suit challenges a remedial action within the meaning of [§] 113(h) if it interferes with the implementation of a CERCLA remedy." *Broward Gardens Tenants Ass'n v. U.S. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002).

### D.     EPA's Ongoing CERCLA Response Action

As the State acknowledges, both EPA and the State of Colorado began working on reclamation and removal actions at the Gold King Mine and surrounding historic mining operations long before the Blowout.  *See, e.g.*, Complaint ¶¶ 26-38 (detailing both Colorado's and EPA's "Reclamation Activities").  Much of this work was undertaken by EPA's "Superfund Technical Assessment and Response Team" under "EPA Emergency and Rapid Response Service (ERRS) contracts."  *Id.* ¶ 32.

Following the Blowout on August 5, 2015, EPA commenced an emergency removal action.  *See* EPA's Gold King Mine Website, press releases for August 8, 2015 (Jones Dec., Ex. C).[2]  In January 2016, EPA undertook an emergency removal action that sought, not only to address physical infrastructure at the mine site, but also to provide alternate water supplies for downstream communities and feed for livestock where use of water from the Animas and San

---

[1] Excluded from the prohibition under CERCLA § 113(h) are actions under CERCLA § 107 "to recover response costs or damages or for contribution."  42 U.S.C. § 9613(h)(1).

[2] The State referenced EPA's Gold King Mine website as part of its Complaint.  *See* Complaint ¶ 2.  Thus, the Court is free to consider documents that are referenced in that website, as well as other documents produced by EPA in connection with its response actions taken in response to the Blowout.  *See, e.g.*, *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) ("A district court may. . . consider documents attached to or referenced in the complaint if they 'are central to the plaintiffs' claim and the parties do not dispute the documents' authenticity.'") (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *Carter v. Seerus, Inc.*, 2017 WL 2838141, * 4 (D. Utah, June 30, 2017) (same).

Juan Rivers was restricted.  *See* EPAH0000290-91, EPAH0000297 (Jones Dec., Ex. D).[3]  In

2017, EPA released its Gold King Mine Transport and Fate Study, which was intended to

quantify the metals from the Gold King Mine release and determine the fate of those metals, as

well as the geographic extent of their dispersion after the release.  *See id.* at EPAH0000292-93

(Jones Dec., Ex. E).  EPA's response actions have included sampling in the Animas River in

New Mexico, the San Juan River in New Mexico and Utah, and Lake Powell.  Significantly,

EPA claims that the impact of the Gold King Mine release and other activities in the Bonita Peak

Mining District ("BPMD") have stretched into those areas.  *See* EPAH0002189, EPAH002193,

EPAH002196, EPAH002229-30 and EPAH002233 (Jones Dec., Ex. F).

     EPA's efforts pertaining to the Gold King Mine release constitute part of EPA's

CERCLA cleanup process to address releases from many abandoned mines in the headwaters of

the Animas River at the BPMD.  EPA included the BPMD on the National Priorities List

("NPL") on September 9, 2016.  Thomas Dec. (attached to this Motion as Ex. A) ¶ 6.  Clearly,

---

[3] In the parallel litigation mentioned above, EPA has produced a number of documents detailing its investigation, emergency response and long-term response to the Blowout.  Those documents are referenced in the Declaration of Rebecca J. Thomas, EPA's Remedial Project Manager with respect to those actions.  A copy of the Thomas Declaration is attached for the Court's reference as Exhibit A and a copy of EPA's Supplemental Brief on Jurisdiction, filed in the New Mexico case, is attached for the Court's reference as Exhibit B and KGC and KGUSA respectfully request that the Court take judicial notice of both documents, as well as the supporting documents referenced in them, the relevant portions of which are attached to the Jones Dec. as Exs. C through H.  The Tenth Circuit has specifically sanctioned consideration of such documents in resolving motions to dismiss.  *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (facts subject to judicial notice may be considered on a Rule 12(b)(6) motion without converting the motion to dismiss into one for summary judgment) (*quoted with approval* in *Hodgsen v. Farmington City*, 675 Fed. Appx 838, 841 (10th Cir. January 10, 2017)).  This includes another court's publicly-filed records "concerning matters that bear directly upon the disposition of the case at hand."  *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *see also St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.").

the Gold King Mine release response actions have been subsumed into the larger BPMD CERCLA cleanup process.  *See, e.g.,* EPAH0000902 (Jones Dec., Ex. G) (request for a removal action at the BPMD and for integrated discharge controls at the Gold King Mine).

The geographic reach of EPA's response action currently underway extends beyond the source of the Blowout.  As EPA noted in its NPL Listing Support Document for the BPMD, the BPMD boundaries have not been restricted, but extend downstream of the mines to areas "where hazardous substance has been 'deposited, stored, placed or *otherwise come to be located*.'" EPAH0000200 (Jones Dec., Ex. H) (italics supplied).  EPA will not finalize the BPMD boundaries until additional investigation is conducted.  *Id*. ("Until the site investigation process has been completed and a remedial action (if any) selected, the EPA can neither estimate the extent of contamination at the NPL site, nor describe the ultimate dimensions of the site.").  "The 'come to be located' language gives the EPA broad authority to clean up contamination when it has spread from the original source."  *Id*.  Clearly, the EPA has undertaken response actions relating to the Blowout, and believes that the scope of its remedial action extends to Lake Powell.

## III.   ARGUMENT

### A.    The State's Complaint Against KGC and KGUSA Should be Dismissed Pursuant to FRCP 12(b)(2) for Lack of Personal Jurisdiction.

A court's authority to exercise jurisdiction over a non-resident is limited, because "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.'"  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985) (quotation omitted). In order for a court to exercise personal jurisdiction over a non-resident, there must be "'minimum contacts' between the defendant and the forum state."  *World–Wide Volkswagen*

*Corp. v. Woodson,* 444 U.S. 286, 291 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  But "[e]ven when a defendant has purposefully established minimum contacts with a forum state, 'minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction.'"  *TH Agriculture & Nutrition, LLC. v. Ace European Group Ltd*, 488 F.3d 1282, 1292 (10th Cir. 2007) (quoting *Burger King*, 471 U.S. at 477-78).

The "minimum contacts" threshold can be met through either general or specific personal jurisdiction.  *See Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000).  General jurisdiction applies when the cause of action does not relate to the defendant's forum-related activities, but requires a defendant to have contacts with the forum that are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317).  Specific jurisdiction can be asserted "over a nonresident defendant 'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Intercon*, 205 F.3d at 1237 (quoting *Burger King*, 471 U.S. at 472).  In this case, there is no factual basis for the assertion of general or specific jurisdiction over either KGC or KGUSA.

### 1.    There is No General Jurisdiction.

For corporations, the "paradigm forum for the exercise of general jurisdiction" is "one in which the corporation is fairly regarded as at home," such as where the corporation is incorporated and its principal place of business.  *Goodyear*, 564 U.S. at 924.  As the Supreme Court recently noted, it is the "exceptional case" where operations elsewhere will be so "substantial as to render [a corporation] essentially at home in the forum State."  *BNSF Railway*

*Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. __, n.19, 134 S. Ct. 746, 761 n.19 (2014)).

There are no facts alleged in the State's Complaint that will support exercise of the Court's general jurisdiction over either KGC or KGUSA.  The State does not allege that either KGC or KGUSA has any contacts whatsoever with the State of Utah, let alone contacts that were "continuous or systematic."  There are no allegations suggesting that either entity was "essentially at home" in Utah.  In fact, the State has alleged just the opposite, namely, that KGC is an Ontario corporation with its principal office in Toronto, and that KGUSA is a Nevada corporation with its principal office in Denver, Colorado.  *See* Complaint ¶¶ 10, 11. Furthermore, as set forth in the Grandy and Litt declarations, neither company operates in Utah, neither company has offices in Utah, and neither company owns, leases or maintains property in Utah.  Grandy Dec., ¶¶ 4-7; Litt Dec., ¶¶ 4-8.

"[G]eneral jurisdiction is proper when a 'corporation's affiliations with the state are so continuous and systematic as *to render them at home in the forum state.*'" *American Fidelity Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1241 (10th Cir. 2016) (emphasis in original opinion) (quoting *Daimler AG*, __U.S. __,134 S. Ct. at 761).  The State has failed to allege any facts suggesting that either KGC or KGUSA has conducted business in Utah to a degree that they would be "essentially at home" here, and no such facts exist.  There is no basis for general jurisdiction over KGC or KGUSA.

2.     **The Complaint Lacks Allegations Sufficient to Support the Court's Exercise of Specific Jurisdiction Over Either KGC or KGUSA.**

Both the Supreme Court and the Tenth Circuit have held that "a defendant's general connections with the forum are not enough" to establish specific jurisdiction.  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, __ U.S. __, 137 S. Ct. 1773,

1781 (2017); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1092 (10th Cir. 1998) (court "must examine the quantity *and* quality of *Defendants'* contacts" with the forum state "to determine whether the district court's assertion of personal jurisdiction . . . comports with due process.") (Italics in original).  Specific jurisdiction attaches only when the defendant "purposely availed [itself] of the privilege of conducting business in [the forum state]," and only when the suit "arise[s] out of or relate[s] to the defendant's contacts with the *forum*."  *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler AG*, 134 S. Ct. at 754) (emphasis in original); *OMI Holdings,* 149 F.3d at 1092 ("consistent with due process, [a court may] assert *specific* jurisdiction over a nonresident defendant 'if the defendant has purposefully directed' his activities at residents of the form <u>and the litigation results from alleged injuries that 'arise out of or relate to' those activities</u>.") (quoting *Burger King*, 471 U.S. at 472) (italics in original opinion, underlining supplied) (internal quotations omitted).

Whether a defendant has "purposefully availed" itself depends upon "three salient factors."  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).  These factors are:  "(a) an intentional action … that was (b) expressly aimed at the forum state … with (c) knowledge that the brunt of the injury would be felt in the forum state."  *Id.* at 1240 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008)); *accord Shipp v. Intl. Auto Group of S. Florida, Inc.*, 2016 WL 3951079, at * 3 (D. Utah, July 20, 2016) (citing these three factors and granting motion to dismiss based on a lack of evidence satisfying them).

Here, the facts alleged by the State do not establish specific jurisdiction over either KGC or KGUSA.  The State has not alleged any of the "three salient factors" discussed in *Shrader* and relied upon by this Court in *Shipp,* nor has it alleged facts suggesting that either KGC or KGUSA has "purposefully availed" itself of the privilege of conducting business in Utah.  The

State's Complaint contains no allegations that either KGC or KGUSA acted intentionally, that either of them aimed any acts at Utah, or that they acted with knowledge that Utah would feel the brunt of their acts.  By contrast, KGC and KGUSA have presented evidence that (a) neither company is incorporated in Utah; (b) neither company has its principal place of business in Utah; and (c) neither company has taken any action directed at or against the State of Utah.  *See* Grandy Dec., ¶¶ 5-6; Litt Dec. ¶ 7.  Furthermore, in the Tenth Circuit, specific jurisdiction may only be exercised "if the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1091.  In the absence of allegations that either KGC or KGUSA took action specifically directed at Utah, it is impossible that this litigation can relate to their activities.

When faced with uncontroverted facts that the three "salient factors" do not exist, the State has the burden of proving the existence of either general or specific jurisdiction.  *OMI Holdings*, 149 F.3d at 1091.  This means that the State must not only allege jurisdictional facts, but must also support those facts with competent proof.  *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1995) (quoted with approval in *Buckhannon v. Monarch Life Ins. Co.*, 46 F.3d 1150, 1995 WL 43593, * 2 (10th Cir. 1995)); *see also Becker v. Angle*, 165 F.2d 140, 141 (10th Cir. 1947) (requiring proof of jurisdiction by a preponderance of evidence). Absent such evidence, this Court cannot exercise jurisdiction over KGC or KGUSA, because to do so would violate the Fourteenth Amendment.  *See Clements v. Tomball Ford, Inc.,* 812 F. Supp. 202, 207 (D. Utah 1993) (dismissing case for lack of personal jurisdiction based on the fact that "the Due Process Clause of the Fourteenth Amendment" allows a defendant to "structure his or her conduct to avoid being forced to litigate in a foreign forum" and, where the

11

defendant has done so, "[t]he fact that independent third-parties . . . may have engaged in business within Utah does not subject [that defendant] to personal jurisdiction.").

**B.**    **The State Has Failed to State a Claim Against KGC and KGUSA for Liability as CERCLA Owners, Operators or Arrangers.**

The State's claims against KGC and KGUSA are premised on the notion that they are somehow "owners," "operators" or "arrangers" under CERCLA.  Complaint ¶¶ 61, 64.  Yet the State does not allege facts to support CERCLA liability claims, and no such facts exist.

**1.**    **The State Has Failed to State a Claim Against Either KGC or KGUSA Based on CERCLA Owner Liability.**

The State claims that both KGC and KGUSA are liable as "owners" under CERCLA. Complaint ¶ 61.  However, an actual ownership interest in the facility from which disposal of hazardous substances occurred is a prerequisite to CERCLA owner liability.  *See* CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2) (imposing liability on "any person who at the time of disposal of any hazardous substance owned . . . any facility at which such hazardous substances were disposed of"); *compare Chevron Mining*, 863 F.3d at 1273 (for purposes of asserting "owner liability" under CERCLA, "[t]he ordinary or natural meaning of 'owner' includes, at a minimum, a legal title holder.") (Citing CERCLA § 107(a)).  In its Complaint, the State not only fails to allege that KGUSA or KGC own any real property interest at the Sunnyside Mine, but also affirmatively alleges that defendant SGC (not KGC or KGUSA) "owns the Sunnyside Mine…."  Complaint ¶ 12.  Absent an allegation that either KGC or KGUSA holds or has held legal title to the Sunnyside Mine, the Complaint fails to state an ownership claim under CERCLA against them.

While specifically alleging that SGC owns the Sunnyside Mine, the State also claims that KGUSA "directly owns" SGC, that KGUSA is a subsidiary of KGC, and that KGC owns the Sunnyside Mine "through" SGC and KGUSA.  Complaint ¶¶ 11, 17.  Even if accepted as true,

these allegations fail to establish "owner" liability under CERCLA.  In order to plead that claim, the State must allege that KGUSA and KGC own or owned an actual interest in the real property that constitutes the alleged "facility."  *See State of N.Y. v. Solvent Chemical Co., Inc.,* 880 F. Supp. 139, 142-143 (W.D.N.Y. 1995) (motion to dismiss "CERCLA owner" claim granted, based on a lack of any allegations in Complaint that defendant owned the site during the time of disposal of hazardous substances).[4]

The State's Complaint fails to provide sufficient facts to assert CERCLA liability that would satisfy this test.  It contains nothing more than an assertion, in ¶¶ 10 and 11 of the Complaint, that KGC and KGUSA "directly own" the Sunnyside Mine facility.  This claim is conclusory and unsupported, and contradicted by facts alleged elsewhere in the State's Complaint.  *See* Complaint ¶¶ 11, 17.

Rather than alleging facts to support its contention that KGUSA and KGC "directly own" the Sunnyside Mine, the State alleges facts that, at most, establish indirect ownership through affiliated corporations:  it alleges in ¶ 11 that KGUSA is a subsidiary of KGC, and in ¶ 21 that KGC acquired SGC in 2003.  The State then leaps to the unfounded conclusion that KGC and KGUSA "controlled and directed" SGC's activities at the Sunnyside Mine.  *Id.*  The State cannot make this jump, however, because a parent's ownership of a subsidiary does not establish

---

[4] Courts that have found "site control" to be a sufficient indicator of ownership to impose liability under CERCLA have done so only in cases involving a long-term lessee or in other circumstances not relevant here.  *See, e.g., Commander Oil Corp. v. Barlo Equipment Corp.*, 215 F.3d 321, 329 (2d Cir. 2000) (lessee lacked requisite site control to be liable as an owner under CERCLA); *Northern States Power Company v. City of Ashland,* 93 F. Supp. 3d 958, 975 (W.D. Wis. 2015) (imposing CERCLA owner liability against a county where the county believed it held legal title to the property and acted as such).

ownership liability under CERCLA.[5]  The Supreme Court squarely rejected such a claim in *United States v. Bestfoods*, 524 U.S. 51 (1998), when it held that "a parent corporation (so-called because of control through ownership of another corporation's stock) is *not* liable for the acts of its subsidiaries…," and that "[n]othing in CERCLA purports to rewrite this well-settled rule…." 524 U.S. at 61, 63 (emphasis supplied).[6]

A parent company's ownership of its subsidiary's stock will not establish ownership liability under CERCLA and the State has alleged no facts to support its claim that either KGC or KGUSA owned or "currently own" any of the property at issue at the time of the alleged release of hazardous substances.  As a result, the State's "CERCLA owner" claims against KGC and KGUSA must be dismissed.

> **2.      The State Has Failed to State a Claim Against Either KGUSA or KGC Based on CERCLA "Operator" Liability.**

The State has also failed to allege any cognizable basis for classifying KGUSA or KGC as CERCLA "operators."  For an entity to be directly liable as an "operator" under CERCLA, the entity must exercise control over the operations of the *facility*, not merely the subsidiary.

In *Bestfoods,* the Supreme Court held that operator liability under CERCLA requires that an entity "manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."  524 U.S. at 66-67.  In other words, "[t]he question

---

[5] Notably, while KGC is the ultimate parent company, neither KGC nor KGUSA own shares of SGC.  Rather, SGC's shares are owned by Echo Bay Inc., a Delaware corporation.  *See* Grandy Dec., ¶ 8.

[6] The Supreme Court essentially held that a parent company's derivative liability as a CERCLA owner or operator – for the activities of a subsidiary that is the actual owner or operator of a contaminated facility – can arise from piercing the corporate veil.  *See* 524 U.S. at 63 (discussing the law of veil piercing).  The State does not seek to pierce any corporate veil here, and has not alleged facts that would support such a claim.

is not whether the parent operates the subsidiary, but rather whether it operates the *facility*, and that operation is evidenced by participation in the activities of the *facility*, not the subsidiary." *Id.* at 68 (citations omitted) (emphasis supplied). *See also Raytheon Constructors, Inc. v. Asarco Inc.*, 368 F.3d 1214, 1218-19 (10th Cir. 2003) (absent evidence that a defendant acted in any capacity apart from as a president of a parent or as a board member, there can be no operator or arranger liability under CERCLA).

Under *Bestfoods,* a parent may be liable as a CERCLA operator when:  (i) it directly operates the subsidiary's facility; or (ii) the subsidiary departs so far from the norms of parental influence as to serve the parent, instead of the subsidiary, in operating the facility; or (iii) an agent of the parent acting solely on the parent's behalf directs or manages activities at the facility. *Bestfoods,* 524 U.S. at 71.  Subsequent courts construing the *Bestfoods* operator test have required that "for one to be considered an operator, there must be some nexus between that person's or entity's control and the hazardous waste contained in the facility."  *Exxon Mobil Corp. v. United States*, 108 F. Supp. 3d 486, 520 (S.D. Tex. 2015).  The State has failed to allege any facts that would suggest, let alone demonstrate, the existence of any such circumstances.

The State claims only that KGUSA and KGC "controlled and directed" SGC's activities.  Complaint ¶ 21.  This allegation is conclusory, and the Complaint alleges no facts to support it.  The State has failed to allege any facts that would show, even if proven, that either KGC or KGUSA ever operated the Sunnyside Mine.  Without such facts, the State cannot establish that either KGC or KGUSA has ever "manage[d], direct[ed], or conduct[ed] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations" at the Sunnyside Mine.  *Bestfoods*, 524 U.S. at 66-67.  As a result, the State's CERCLA operator claims against KGUSA and KGC must be dismissed.

3.    **The State Has Failed to State a Claim Against Either KGUSA or KGC Based on CERCLA "Arranger" Liability.**

The State's claim that KGC and KGUSA qualify as "arrangers" under CERCLA fail for similar reasons.  In the Tenth Circuit, arranger liability requires satisfaction of three requirements:

> First, the party must be a "person" as defined in CERCLA.  Second, the party must "own" or "possess" the hazardous substance at issue.  Third, the party must, by contract, agreement or otherwise, arrange for the transport or disposal of such hazardous substances.

*Raytheon Constructors,* 368 F.3d at 1219 (citing 42 U.S.C. § 9607(a)(3)).  The State's Complaint lacks any facts, let alone well-pleaded facts, that would support the State's claims that either KGC or KGUSA owned or possessed the hazardous substances or arranged for their disposal.

The State alleges that all Defendants are "arrangers" because they owned or possessed the hazardous substances that were released in the "Blowout," and because "they by contract, agreement or otherwise, intentionally arranged for the disposal, treatment, and/or transport of hazardous substances released from the Gold King Mine and other nearby mines."  Complaint ¶ 64.  The Complaint contains no facts to support these conclusions.  Without more, the State's allegations do nothing more than provide "a formulaic recitation of the elements of a cause of action, [which] will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  Under both *Iqbal* and *Twombly,* the State has failed to allege facts to support its "arranger" claim, and that claim should therefore be dismissed.

The State has failed to plead facts that would establish that either KGC or KGUSA is an arranger under CERCLA, just as it has failed to allege facts that would establish that either company is an owner or an operator.  The Complaint's first cause of action, which seeks cost recovery under CERCLA, is predicated upon a defendant being either an owner, an operator or an arranger.  42 U.S.C. § 9607(a).  Furthermore, because the Complaint's second cause of action

16

seeks declaratory relief under 42 U.S.C. § 9613(g)(2), it too must be dismissed, as the availability of declaratory relief is predicated on asserting sufficient facts to support a valid claim under CERCLA § 107(a).  Because the State has not met the standards for establishing valid CERCLA liability claims, it is also not entitled to declaratory relief.  *See* 42 U.S.C. § 9613(g)(2).[7]  Accordingly, even if the Court disagrees with KGC and KGUSA that it lacks jurisdiction over the State's common law and state-law claims, there can be no argument that the State has failed to allege facts sufficient to maintain its CERCLA claims, meaning that counts 1 and 2 of the State's Complaint must be dismissed.

### C.    CERCLA § 113(h) Bars the Court From Considering the State's Claims.

Counts 2, 3, 4, 5, 6 and 7 of the State's Complaint challenge EPA's ongoing response action and, because of this, each of those claims is barred by operation of CERCLA § 113(h).[8]

### 1.    EPA Has Undertaken a CERCLA Response Action.

There can be no doubt that EPA has commenced a CERCLA response action.  *See* explanation of EPA's CERCLA response in Section II(D) above, and documents produced by EPA detailing that response, attached to the Jones Dec. as Exs. C through H.  Notwithstanding this fact, the State seeks an injunction in this case, requiring "all Defendants to abate the nuisance and cure the trespass, including but not limited to the soil, sediments and groundwater

---

[7] Dismissal of the State's federal claims also warrants dismissal of its claims under state law. *See* 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction.").  The Tenth Circuit has "generally held that if federal claims are dismissed . . . , leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citations omitted).

[8] The State's cost recovery claim under CERCLA § 107(a), enumerated in its Complaint at ¶¶ 59-71, is preserved from the bar by § 113(h)(1) (jurisdictional bar divests federal courts of jurisdiction to hear challenges to removal or remedial action, except for "[a]n action under section 9607 of this title to recover response costs or for contribution.").

in the Animas and San Juan Rivers and Lake Powell."  Complaint ¶ 126.  Implementation of this

remedy would not only require the Court to review and opine on the effectiveness of EPA's

response action, but also to undertake its own study and substitute its own response action for the

one currently being studied and implemented by EPA.

 2. **Because EPA is Proceeding with a CERCLA Response, the Court is Divested of Jurisdiction to Consider Challenges to That Action.**

If granted, the State's requested relief would interrupt and disrupt, not only EPA's efforts

to respond to the Gold King Mine release, but also its larger BPMD cleanup process under

CERCLA.  Congress recognized that the pursuit of such claims would interfere with EPA's

response efforts, and it enacted CERCLA § 113(h) specifically to eliminate that interference.  As

described above, EPA's investigation and response is well underway and includes the Gold King

Mine release.  In addition, as EPA's documents demonstrate, the Agency has several more steps

to take before identifying and implementing a permanent remedy.  *See* Jones Dec., Ex. H

(Support Document for Revised NPL List Final Rule for BPMD Site) (explaining the geographic

scope of the Site, the fact that it currently includes 19 mines and that EPA is considering action

at 29 other mines, and that CERCLA's language provides EPA "broad authority to clean up

contamination when it has spread from the original source.").

Where, as here, EPA has undertaken a CERCLA investigation and response to an

incident, lawsuits over the incident are viewed as "challenges" to EPA's response actions and, as

such, are precluded under CERCLA § 113(h).  The leading case in the Tenth Circuit sustaining

this proposition is *New Mexico v. General Elec. Co.*, 467 F.3d 1223 (10th Cir. 2006), in which

the Tenth Circuit stated categorically that "CERCLA 'protects the execution of a CERCLA plan

*during its pendency* from lawsuits that might interfere with the expeditious cleanup effort.'" 467

F.3d at 1249 (quoting *McClellan*, 47 F.3d at 329 (italics in original opinion)).  As acknowledged

18

in *New Mexico*, CERCLA § 113(h) completely precludes the Court from exercising jurisdiction over the State's Complaint: "No Federal Court shall have jurisdiction . . . to review any challenges to removal or remedial action selected. . . ." 467 F.3d at 1249 (quoting 42 U.S.C. § 9613(h)).

The Tenth Circuit has been clear that where "a state seeks to challenge a CERCLA response action, the plain language of § 9613(h) would limit a federal court's jurisdiction to review such a challenge." *U.S. v. State of Colorado*, 990 F.2d 1565, 1576 (10th Cir. 1993). "Because the State's lawsuit calls into question the EPA's remedial response plan, it is related to the goals of the cleanup, and thus constitutes a 'challenge' to the cleanup under § 9613(h)." *New Mexico*, 467 F.3d at 1249; *McClellan*, 47 F.3d at 328 ("the unqualified language of [section 9613] precludes 'any challenges' to CERCLA Section 104 clean-ups, not just those brought under provisions of CERCLA."); *compare Schalk v. Reilly*, 900 F.2d 1091, 1096 (9th Cir. 1990) ("The jurisdictional bar in SARA merely codified the established rule that preimplementation review of response actions would not be allowed."); *Alabama v. United States Envt'l Prot. Agency*, 871 F.2d 1548, 1557 (11th Cir. 1989) ("The legislative history behind this section supports rather than clearly contradicts [the] conclusion [that j]udicial review is to be delayed until 'all activities set forth in the Record of Decision for the surface cleanup phase have been completed.") (Citing H. Conf. Rep. No. 962, 99th Cong., 2nd Sess. 224, *reprinted* in 1986 U.S.C. Conf. & Admin. News 2835, 3317).

The Tenth Circuit has held that the terms of § 113(h) effect a "blunt withdrawal of federal jurisdiction over challenges to ongoing CERCLA removal actions." *Cannon v. Gates*, 538 F.3d 1327, 1333 (10th Cir. 2008) (quoting *McClellan*, 47 F.3d at 328). When Congress adopted the SARA Amendments to the CERCLA statute, which included § 113(h), it left no doubt that once

EPA has commenced any response action at a CERCLA site, any judicial review of that action is completely foreclosed until the response has been finished:  "[T]here is no right to judicial review of [EPA's] . . . implementation of response actions until after the response actions have been completed."  H.R. Rep. No. 99-253(I) at 81, reprinted in 1986 U.S.C.C.A.N. 2835, 2863 (quoted in *New Mexico*, 467 F.3d at 1249).  The time that it may take for EPA to develop, implement and complete its response is irrelevant; "[i]n other words, '[t]he obvious meaning of [§ 113(h)] is that . . . no challenge to the cleanup may occur prior to the completion of the remedy.'"  *Id.* (quoting *Schalk*, 900 F.2d at 1095).

This Court adopted this same reasoning in the case of *Cannon v. Gates*, No. 2:05-cv-00922, slip op. (D. Utah April 4, 2007) (copy attached to this motion for the Court's reference as Exhibit C).  In *Cannon*, the plaintiffs brought claims under both RCRA and the APA, seeking a declaratory judgment that the Department of Defense had contaminated the plaintiffs' property by testing various chemical, conventional and incendiary weapons at the Dugway Proving Ground, and then improperly delayed the cleanup of their property.  *See id.* at 2-3.  This Court dismissed those claims pursuant to CERCLA § 113(h), even though they were not brought under CERCLA, and even though the Department of Defense had not yet commenced active cleanup of the site.  *See* Ex. C at 5-6.  In doing so, the Court held that "[t]he scope of section 113(h) is broad, and bars citizen suits under any federal law, including RCRA, when the prerequisites to its application are met."  *Id.* at 5.

In affirming this Court's decision in *Cannon,* the Tenth Circuit reiterated that "[t]he obvious meaning of § 9613(h) is that when a remedy has been selected, no challenge to the cleanup may occur prior to the completion of the remedy. …  As we noted above, the broad statutory language indicates that Congress intended to strip federal jurisdiction from any

20

challenge that would interfere with an ongoing removal or remediation process." *Cannon*, 538 F.3d at 1332, 1336 (quoting *New Mexico*, 467 F.3d at 1249).

### 3.    The State's Common Law Claims Are Also Barred.

The Tenth Circuit has also held that, where prosecution of state law claims for negligence and public nuisance would conflict with an ongoing removal action, those claims are also barred by CERCLA § 113(h).  *New Mexico*, 467 F.3d at 1247-48 (State of New Mexico's state law claims preempted where pursuit of those remedies conflicted with Congressional objectives as enunciated in CERCLA); *accord Appleton Papers Inc. v. George A. Whiting Paper Co.*, 901 F. Supp.2d 1113, 1115-17 (E.D. Wis. 2012) (dismissing state law claims for contribution, negligence and public nuisance, and holding that the parties asserting such claims could not pursue recovery under state law which they would be denied under CERCLA).

Here, in addition to its CERCLA claims, the State has asserted common law claims for negligence, gross negligence, public nuisance and trespass (Complaint ¶¶ 76-107), as well as statutory claims under the Utah Water Quality Act (*id.* ¶¶ 108-114) and the Utah Solid and Hazardous Waste Act (*id.* ¶¶ 115-120).  In connection with those claims, the State seeks a declaratory judgment from the Court that defendants were "negligent, grossly negligent, or both;" disgorgement of profits accrued from the allegedly tortious conduct; and abatement of the alleged nuisance and trespass and civil penalties under the Utah Quality Act and Utah Solid and Hazardous Waste Act.  *Id.* ¶¶ 124-128.  Because such claims challenge and would "interfere" with EPA's ongoing "clean-up activities, … Congress determined [they] should be dealt with after the site has been cleaned up."  *Giovanni v. United State Dep't of the Navy*, 2017 WL 2880749, * 4 (E.D. Pa. July 6, 2017) (citing *Redland Soccer Club v. Dep't of Army*, 801 F. Supp. 1432, 1435 (M.D. Pa. 1992) (CERCLA § 113(h) barred plaintiffs' medical monitoring claims asserted under state environmental statutes)).

The State's claims challenge EPA's ongoing CERCLA response action.  The State has specifically identified several of EPA's actions at Gold King Mine and the Blowout which it maintains support its claims under CERCLA.  *See, e.g.,* Complaint ¶¶ 31-38 (detailing and criticizing EPA's historic work at the Gold King Mine, including actions taken pursuant to CERCLA or using Superfund monies); *id.* ¶¶ 42-55 (identifying the alleged negligent actions by EPA and its contractors that lead to the Blowout); *id.* ¶¶ 59-71 (outlining the State's claims under CERCLA against EPA and other defendants).  In addition, the State has alleged that it is entitled to, and has demanded that the Court grant injunctive relief compelling the Defendants, including EPA, to take specific action to remove the alleged contaminants (both hazardous substances and others) from the Animas River, the San Juan River and Lake Powell.  *See* Complaint ¶¶ 96, 102-104, 106, 126-127.  The area over which the State has demanded that the Court exercise jurisdiction in order to implement this remedy extends far beyond the confines of the State of Utah and into the area that EPA has identified as part of the Bonita Peak Mining District in Colorado.  *Compare* Complaint ¶¶ 1, 57, 67-68, 74-75, 79, 81, 86, 88, 91-93, 99, 102-104 (describing the impacts from the Blowout as extending from the San Juan River in Colorado to Lake Powell) with documents produced by EPA and attached as Jones Dec., Ex. F, detailing the geographic scope of EPA's investigation into the contamination within the Bonita Peak Mining District.

## IV.    CONCLUSION

With respect, KGC and KGUSA submit that this Court does not have jurisdiction over them, because neither of them does business in Utah and neither of them has engaged in any activity directed toward the State of Utah.  They further submit that the State has not alleged facts sufficient to establish that either of them could be liable under CERCLA, because neither of them has ever been an owner or an operator of the Sunnyside Mine or any other property at issue

at the time of the alleged release of hazardous substances, and because neither of them has ever

been an arranger, as defined by CERCLA.  Finally, these defendants submit that the Court lacks

jurisdiction to consider the State's claims based on the operation of CERCLA ¶ 113(h).  For all

of these reasons, KGC and KGUSA respectfully request that the State's claims against them be

dismissed.

Respectfully submitted this 15th day of December, 2017.

HOLLAND & HART LLP

*/s/ Steven G Jones*
Craig D. Galli, #5072
Steven G. Jones, # 15063
Bradford C. Berge, *Admitted Pro Hac Vice*
Jill H. Van Noord, *Admitted Pro Hac Vice*

*Counsel for Defendants Kinross Gold*
*Corporation and Kinross Gold U.S.A., Inc.*

10510213_4

23