Stephen J. Trayner (4928)
Ryan P. Atkinson (10673)
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
(801) 532-7080
(801) 596-1508 [facsimile]
strayner@strongandhanni.com
ratkinson@strongandhanni.com

Brian Molzahn (admitted *pro hac vice*)
HALL & EVANS, LLC
1001 Seventeenth Street Suite 300
Denver, Colorado 80202
(303) 628-3300
(303) 628-3368 [facsimile]
langd@hallevans.com
molzahnb@hallevans.com
**COUNSEL FOR DEFENDANT
HARRISON WESTERN CONSTRUCTION
CORPORATION**

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **STATE OF UTAH,**<br><br>    Plaintiff,<br><br>**v.**<br><br>**ENVIRONMENTAL RESTORATION, LLC,** *et al.*,<br><br>    Defendants. | Case No. **02:17—cv—00866-BCW**<br><br>**MOTION OF DEFENDANT HARRISON WESTERN CONSTRUCTION CORPORATION TO DISMISS PLAINTIFF STATE OF UTAH'S COMPLAINT**<br><br>**Magistrate Judge Brooke C. Wells** |

Defendant Harrison Western Construction Corporation ("Harrison Western") moves now, pursuant to **Fed.R.Civ.P. 12(b)(2)** and **12(b)(6)**, to dismiss plaintiff State of Utah's complaint and, in support thereof, states as follows:

## INTRODUCTION

The underlying action stems from the Gold King Mine spill near Silverton, Colorado, on August 5, 2015. (EXHIBIT A – State of Utah Complaint at ¶¶ 1, 56-58). The spill involved around 3,000,000 gallons of contaminated water and toxic waste, which traveled into nearby Cement Creek, into the Animas River, into the San Juan River and, finally, into Lake Powell. (EXHIBIT A at ¶ 57). Following the spill and in response to certain (alleged) "environmental, economic and other damage" (EXHIBIT A at ¶ 58), plaintiff State of Utah ("Utah") brought various statutory and common law tort claims against Harrison Western and others (EXHIBIT A at ¶¶ 59-120), through which it demands declaratory, monetary and injunctive relief.[1]

---

[1]Utah has sued Harrison Western Corporation (EXHIBIT A), and Utah has served its complaint upon Harrison Western Corporation. (EXHIBIT B – State of Utah Proof of Service).

Harrison Western Corporation, however, did not perform any work or services in connection with the Gold King Mine; Harrison Western Construction Corporation did. (EXHIBIT C – Second Declaration of Christopher A. Hassel at ¶ 7). Moreover, and while separate legal entities, both Harrison Western Corporation and Harrison Western Construction Corporation maintain the same principal place of business in Lakewood, Colorado. (EXHIBIT C at ¶ 8). Accordingly, Harrison Western Construction Corporation has notice of the underlying complaint (EXHIBIT C at ¶

(EXHIBIT A at PRAYER FOR RELIEF).

## RELIEF SOUGHT AND GROUNDS THEREFOR

Harrison Western broadly contends it has no liability to Utah because there is no factual or legal basis for any of the claims directed against it.  At this time, however, Harrison Western contends

- that Utah courts lack personal jurisdiction because Harrison Western is a Colorado corporation with a principal place of business in Colorado and because Utah's (alleged) damages did not result from any intentional conduct by Harrison Western expressly aimed at Utah; and,
- that Utah has otherwise failed to state a claim for relief.

## BACKGROUND

**Harrison Western Is A Colorado Corporation With A Principal Place Of Business In Colorado**

Harrison Western is an experienced and expert mining services subcontractor. (EXHIBIT A at ¶¶ 9, 80).  Harrison Western is a Colorado corporation.  (EXHIBIT A at ¶ 9).  Harrison Western's principal place of business is in Colorado.  (EXHIBIT A at ¶ 9).  It has had no other principal place of business.  (EXHIBIT C at ¶ 6).

---

8) and now challenges the legal sufficiency of that pleading as well as the authority of a Utah court to assert jurisdiction over it under the circumstances.

Harrison Western's headquarters are also in Colorado.  (EXHIBIT C at ¶ 6).  It has had no other headquarters.  (EXHIBIT C at ¶ 6).

All Harrison Western's executive and administrative functions occur in Colorado; none have occurred in any other state.  (EXHIBIT C at ¶ 6).  All Harrison Western's corporate officers live and reside in Colorado; none live or reside elsewhere.  (EXHIBIT C at ¶¶ 1-4).

**Harrison Western's Role And Involvement With The Gold King Mine**

All the work performed by Harrison Western in connection with the Gold King Mine was undertaken in Colorado or was intended to be undertaken in Colorado at the mine itself.  (EXHIBIT C at ¶ 9).

More specifically, Harrison Western was retained by defendant Environmental Restoration, LLC ("ER"), in August 2014, to safely reopen the Gold King Mine.  (EXHIBIT D – Declaration of Robert Heeter at ¶ 7).[2]  Toward that end, Harrison

---

[2]A court may consider facts outside of a complaint relevant to resolving a challenge to personal jurisdiction.  **See** *Holt v. United States*, **46 F.3d 1000, 1003 (10th Cir. 1995)**(noting "wide discretion" to consider facts outside a complaint in determining court's jurisdiction).

The aforementioned declaration and another very similar declaration (EXHIBIT E – Declaration of Christopher A. Hassel) were provided to opposing counsel this past June 2017 in an effort to explain the role and involvement of Harrison Western in connection with the Gold King Mine.  Unfortunately, both declarations contain a scrivener's error – both refer in error to Harrison Western Corporation, instead of Harrison Western Construction Corporation, the mining

Western mobilized at the mine the following month (EXHIBIT D at ¶¶ 9-10), at which time it observed others excavating near the mine's adit.  (EXHIBIT D at ¶ 10). Harrison Western noticed seepage in the face of the excavation and in a quantity that it believed could not be safely handled under the existing circumstances.  (EXHIBIT D at ¶¶ 11-13).  Harrison Western recommended that the excavation cease, and it did. (EXHIBIT D at ¶ 14).

With the mine reopening "suspended" (EXHIBIT A at ¶ 38), Harrison Western returned to suburban Denver and prepared a revised construction plan to reopen the Gold King Mine.  (EXHIBIT D at ¶ 17).  Harrison Western planned to return to the Gold King Mine during the week of August 17, 2015.  (EXHIBIT D at ¶ 19).

Others, including the United States Environmental Protection Agency ("EPA") and ER, returned to the mine much earlier.  (EXHIBIT A at ¶¶ 41-49, 51-54). According to Utah, these parties -- "EPA's On Site Team" -- "created a plan to conduct excavation activities" at the Gold King Mine on August 4, 2015.  (EXHIBIT A at ¶ 41).  However, that plan -- and the actual excavation of the mine's adit -- substantially

---

services subcontractor that was retained by ER and that performed various work and services in connection with the Gold King Mine.  (EXHIBIT C at ¶ 10).

deviated from Harrison Western's revised construction plan.  (EXHIBIT D at ¶¶ 24-26).  Moreover, that plan -- and the actual excavation of the mine's adit -- were undertaken in the absence of, and without any input from, Harrison Western, "the subcontractor with the experience and expertise necessary to safely excavate the Gold King Mine adit."  (EXHIBIT A at ¶¶ 41-49, 51-54, 80).  More specifically,

- "EPA's On Site Team" -- **not Harrison Western** -- "observed contaminated water seeping out an elevation about five to six feet above the floor of the adit;"
- "EPA's On Site Team" -- **not Harrison Western** -- "assumed this meant that the contaminated water was below the top of the adit;"
- "EPA's On Site Team" -- **not Harrison Western** -- "also assumed that because the mine was draining, it was not under pressure from contaminated water behind it;"
- "EPA's On Site Team" -- **not Harrison Western** -- "believed that it was not necessary to directly test for the level or volume of contaminated water behind the blockage;"
- "EPA's On Site Team" -- **not Harrison Western** -- "did not insert a measuring devise from a location at a higher elevation from the blockage at the adit to determine the level of contaminated water behind it;"
- "EPA's On Site Team" -- **not Harrison Western** -- "did not take measurements to determine the pressure of the contaminated water against the blockage at the adit;"
- "EPA's On Site Team" -- **not Harrison Western** -- "did not take the precaution of installing a secondary containment system, including but not limited to a large catch basin, to prevent an accidental release of large quantities of toxic wastewater from reaching

the Animas River;"

- "EPA's On Site Team" -- **not Harrison Western** -- "did not take the precaution of developing and implementing emergency response procedures in the event of an accidental release of large quantities of toxic wastewater, to prevent those chemicals from reaching the Animas River;"
- "EPA's On Site Team" -- **not Harrison Western** -- "performed work at the [Gold King Mine];"
- "EPA's On Site Team" -- **not Harrison Western** -- "did not accurately measure the level, volume or pressure of the toxic wastewater behind the blockage before they performed their work;"
- members of "EPA's On Site Team" -- **not Harrison Western** -- "have given conflicting reports regarding [the objective of] their work;" and,
- members of "EPA's On Site Team" -- **not Harrison Western** -- "miscommunicated" and created the conflict regarding the objective of their work. (EXHIBIT A at ¶¶ 41-49, 51-54).

Ultimately, "EPA's On Site Team" -- **not Harrison Western** -- "negligently breached an entrance into the Gold King Mine, causing a blowout with approximately three million gallons of toxic waste spilling into the Animas River in Southwestern Colorado," where it "then flowed to the San Juan River and Lake Powell[,] causing environmental damage to the State of Utah." (EXHIBIT A at ¶ 1).

**Utah Sues Harrison Western**

On July 31, 2017, Utah sued Harrison Western in connection with the Gold King Mine spill. (EXHIBIT A). Utah did so, advancing the following claims:

- cost recovery and other relief under CERCLA;

7

- declaratory judgment under CERCLA;
- negligence/gross negligence;
- public nuisance;
- trespass;
- violation of Utah's Water Quality Act;
- violation of Utah's Solid and Hazardous Waste Act. (EXHIBIT A at ¶¶ 59-120).

## ARGUMENT

## I. UTAH COURTS LACKS PERSONAL JURISDICTION OVER HARRISON WESTERN.

Utah courts lack personal jurisdiction over Harrison Western.

### A. Standard Of Review.

Under **Fed.R.Civ.P. 12(b)(2)**, a district court must grant a motion to dismiss if it lacks personal jurisdiction over a defendant.  When personal jurisdiction is challenged, the "plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on the pleadings (with attachments) and affidavits, that burden can be met with a *prima facie* showing." ***Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)**.  A district court must accept as true all well-pleaded, non-conclusory facts alleged in the plaintiff's complaint, and resolve all factual disputes in the plaintiff's favor.  ***Shrader*, 633 F.3d at 1239**. However, the allegations in a complaint are only taken as true to the extent that they are uncontroverted by the defendant's affidavits. ***Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990)**.

**B.      Personal Jurisdiction Generally.**

The Due Process Clause of the Fourteenth Amendment constrains the authority a state court may exercise over a non-resident defendant.  **See *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2013)**.  That authority is a function of the relationship and connection between the state and the non-resident defendant.  **See *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2850-51 (2011)**.  Over time, courts addressing a state court's authority over a non-resident defendant have differentiated between general jurisdiction and specific jurisdiction.  **See *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014)**.  A state court must have general or specific jurisdiction over a non-resident defendant before its exercise of authority over that defendant is considered constitutional.  ***Goodyear Dunlop Tires Operations, S.A.*, 131 S.Ct. at 2853-54 (2011)**.  More specifically, "[t]he Supreme Court has held that, to exercise [general or specific] jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" ***Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)**; ***Blueberry Hill LLC v. Shalom International Corp.*, 2017 U.S. Dist. LEXIS 189321 * 5 (Utah)**(unpublished).

Neither general nor specific jurisdiction is present here.[3]

### C.     General Jurisdiction.

Utah has not alleged facts sufficient to establish the general jurisdiction of its courts over Harrison Western.  (EXHIBIT A at ¶ 9 (alleging Harrison Western is a Colorado corporation with a principal place of business in Colorado)).

### D.     Specific Jurisdiction Does Not Exist Over Harrison Western.

Where, as here, general jurisdiction has not been alleged, a state court may still exercise specific jurisdiction over a non-resident defendant when the "controversy is related to or 'arises out of' [that] defendant's contacts with the forum."  ***Helicopteros Nacionales de Colombia, S.A. v. Hall***, **104 S.Ct. 1868, 1872 (1984)**.  In other words, "the defendant's suit-related conduct must create a

---

[3]CERCLA does not authorize nationwide service of process.  ***E.g., United States v. Conrail***, **674 F.Supp. 138, 142 n.1 (D.Del. 1987)**(noting nationwide service of process exception only for claims brought by United States).  This means, then, that a court must look at whether the forum state authorizes service of process upon a non-resident defendant.  **Fed.R.Civ.P. 4(k)(1)(A)**.

Here, Utah does authorize such service of process (**Utah Code Ann. § 78B-3-206**), and Utah's corresponding long-arm statute provides for the exercise of specific jurisdiction over a non-resident defendant under certain circumstances. **Utah Code Ann. § 78B-3-205**.  Such jurisdiction, however, is expressly limited "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Construction."  **Utah Code Ann. § 78B-3-201(3)**.  Accordingly, where, as here, a non-resident defendant challenges the exercise of specific jurisdiction, a Utah court "need only address the constitutional issue of whether the exercise of personal jurisdiction over the defendants comports with due process." ***Blueberry Hill LLC***, **2017 U.S.Dist.LEXIS 189321 * 4** (unpublished).

substantial connection with the forum state." *Walden*, **134 S.Ct. at 1121**. The defendant must have "'purposefully directed' its activities at the state's residents," and "the cause of action [must] arise[] out of those activities." *Melea, Ltd. v. Jawer SA*, **511 F.3d 1060, 1066 (10th Cir. 2007)**, *quoting Burger King Corp. v. Rudzewicz*, **105 S.Ct. 2174, 2182 (1985)**. As the Tenth Circuit has recently held, "purposeful direction exists when there is 'an intentional action … expressly aimed at the forum state … with [the] knowledge that the brunt of the injury would be felt in the forum state.'" *Anzures v. Flagship Restaurant. Group*, **819 F.3d 1277, 1280 (10th Cir. 2016)**, *quoting Dudnikov v. Chalk & Vermilion Fine Arts*, **514 F.3d 1063, 1072 (10th Cir. 2008)**. Likewise, the connection between the defendant and the forum state must be "based on intentional conduct by the defendant" and "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, **134 S.Ct. at 1122-23**, *quoting Burger King Corp.*, **105 S.Ct. at 2184**; **see** *Calder v. Jones*, **104 S.Ct. 1482, 1487 (1984)**; *Dudnikov*, **514 F.3d at 1072**.

Here, Utah has alleged no "intentional conduct" by Harrison Western "expressly aimed at" that state. (EXHIBIT A at ¶¶ 9, 33, 36, 38). Utah has also alleged no knowledge on the part of Harrison Western that the actions it actually undertook in connection with the Gold King Mine (EXHIBIT A at ¶¶ 9, 33, 36-38) would result in harm to that state almost a year later, when EPA's On Site Team --

**in Harrison Western's absence and without Harrison Western's knowledge** -- "created a plan to conduct excavation activities" and excavated at the mine adit (EXHIBIT A at ¶¶ 41-49, 51), causing the spill.

The spill, of course, brought contaminated wastewater from the Gold King Mine into the San Juan River and into Lake Powell. (EXHIBIT A at ¶¶ 1, 58). However, where damage or injury is felt is not a sufficient connection with the forum state to serve as the basis for specific jurisdiction. ***Walden*, 134 S.Ct. at 1125** ("The proper question is not *where* the plaintiff experienced a particular injury or effect but *whether the defendant's conduct connects him to the forum in a meaningful way*." (Emphasis added).). In other words, "a plaintiff's injuries must '"arise out of' [the] defendant's forum-related *activities*.'" (Emphasis added). ***Anzures*, 819 F.3d at 1280,** *quoting Dudnikov*, **514 F.3d at 1071**.

Utah courts, therefore, cannot exercise specific jurisdiction over Harrison Western under the circumstances. **See *Dudnikov*, 514 F.3d at 1072**.

## II.   UTAH HAS FAILED TO STATE A CLAIM FOR RELIEF AGAINST HARRISON WESTERN.

Utah has also failed to state a claim for relief against Harrison Western.

### A.   Standard Of Review.

As with any litigant, Utah is subject to the rules of civil procedure (**Fed.R.Civ.P. 8(a)**) and is required to plead "enough facts to state a claim to relief

that is plausible on its face" based upon "factual content that allows the court to draw

reasonable inference that the defendant is liable for the misconduct alleged" (***Bell***

***Atlantic Corp. v. Twombly***, **127 S.Ct. 1955, 1974 (2007)**), which is to say

> a complaint must explain what *each defendant* did to him
> or her; when *the defendant* did it; how *the defendant's*
> action harmed him or her; and, what specific legal right
> the plaintiff believes *the defendant* violated.  After all,
> these are, very basically put, the elements that enable the
> legal system to get weaving - permitting *the defendant*
> sufficient notice to begin preparing its defense and the
> court sufficient clarity to adjudicate the merits.  (Emphasis
> added).  ***Nasious v. Two Unknown B.I.C.E. Agents***, **492
> F.3d 1158, 1163 (10th Cir. 2007)**.

In determining whether a plaintiff has met its pleading burden, conclusory

(***Bell Atlantic Corp.***, **127 S.Ct. at 1965-66**) and contradictory allegations (***Hirsch v.***

***Author Anderson & Co***., **72 F.3d 1085, 1095 (2nd Cir. 1995)**) must be disregarded.

Here, Utah has offered some specific, non-conclusory allegations regarding

Harrison Western and some specific, non-conclusory allegations regarding "EPA's

On Site Team."  (EXHIBIT A at ¶¶ 9, 33, 36-38, 41-49, 51-54, 80).  Together, those

allegations establish that Harrison Western

- is an experienced and expert mining services
  subcontractor (EXHIBIT A at ¶ 80);
- **was not present at the Gold King Mine on August
  4-5, 2015** (EXHIBIT A at ¶ 80);
- did not "create" a separate plan on August 4, 2015
  "to conduct excavation activities" at the Gold King

Mine (EXHIBIT A at ¶ 41)

- did not observe the Gold King Mine on August 4-5, 2015 or make any assumptions based thereon (EXHIBIT A at ¶ 42);
- did not observe the Gold King Mine on August 4-5, 2015 or form any beliefs based thereon (EXHIBIT A at ¶¶ 43-45);
- did not fail to undertake any tasks or precautions at the Gold King Mine on August 4-5, 2015 (EXHIBIT A at ¶¶ 46-49, 52);
- **did not perform any work at the Gold King Mine on August 4-5, 2015** (EXHIBIT A at ¶ 51);
- did not give conflicting reports regarding the work others performed at the Gold King Mine on August 4-5, 2015 (EXHIBIT A at ¶ 53); and,
- did not miscommunicate with others performing work at the Gold King Mine on August 4-5, 2015. (EXHIBIT A at ¶ 54).

## B.  Utah Has Failed To Alleged Facts Sufficient To Establish Harrison Western Is An "Operator," "Arranger" Or "Transporter" Under CERCLA.

Despite the aforementioned allegations and despite alleging that Harrison Western was a CERCLA "response action contractor"[4] (EXHIBIT A at ¶ 66), Utah has alleged that Harrison Western was

---

[4]A response action contractor" cannot be a strictly-liable "covered person," such as an "operator," "arranger" or "transporter," under CERCLA. ***Blasland, Bouck & Lee, Inc. v. City of North Miami***, **96 F.Supp.2d 1375, 1379-80 (S.D.Fla. 2000)**("engaging in clean-up activities at a facility does not qualify as the type of 'operation' CERCLA contemplated"), ***aff'd in part and rev'd in part on other grounds***, **283 F.3d 1286 (11th Cir. 2002)**(noting; **see 42 U.S.C. § 9619(a)(1)-(2)**("response action contractor" not liable under CERCLA unless negligent); ***New Castle County v. Halliburton NUS Corp.***, **903 F.Supp. 771, 775 (D.Del.**

- a CERCLA "operator" "*when the "[spill] occurred*" "[b]y "managing, directing, and implementing reclamation activities at the Gold King Mine site" (emphasis added)(EXHIBIT A at ¶ 63);

- a CERCLA "arranger" "because [it], by contract, agreement or otherwise, intentionally arranged for the disposal, treatment, and/or transport of hazardous substances from the Gold King Mine" and because it "owned or possessed the hazardous substances that were released" on August 5, 2015 (EXHIBIT A at ¶ 64); and,

- a CERCLA "transporter" because "[it] accepted hazardous substances from the Sunnyside Mine and the Gold King Mine, and undertook to dispose, treat, and transport hazardous substances to disposal or treatment facilities selected by [it]." (EXHIBIT A at ¶ 65).

But, there is no supporting basis in fact for those allegations. **See *Ashcroft v. Iqbal*, 129 S.Ct. 1837, 1949 (2009)**(sufficiency of pleading determined by facts pled and inferences from facts pled, not conclusions). Indeed, Utah's specific, non-conclusory allegations regarding Harrison Western establish that the subcontractor was not present at the Gold King Mine on August 4-5, 2015, when -- unbeknownst to it (EXHIBIT D at ¶¶ 22-23) -- "EPA's On Site Team" "created" and followed

---

**1995**)("response action contractor" not strictly liable under CERCLA), *aff'd*, **111 F.3d 1116 (3rd Cir. 1997)**(refusing to "unequivocally" state "a [response action contractor] can never be a potentially responsible person subject to joint and several liability").

their own excavation plan at the adit (EXHIBIT A at ¶¶ 41-49, 51-54), causing the spill.

Those allegations, however, do not establish any CERCLA liability for Harrison Western.

### 1.    CERLA "Operator" Liability.[5]

Utah's complaint does not state a claim for CERCLA "operator" liability against Harrison Western because it fails to allege specific, non-conclusory facts establishing that the absent mining services subcontractor Harrison Western actually controlled or participated in the "creat[ion]" of a separate plan by "EPA's On Site Team" "to conduct excavation activities" at the Gold King Mine or in the excavation activities themselves. See *K.C. 1986 Limited Partnership v. Reade Manufacturing*, **472 F.3d 1009, 1020 (8th Cir. 2007)**; *United States v. Town of Brighton*, **153 F.3d 307, 314 (6th Cir. 1998)**("Before one can be considered an 'operator' for CERCLA purposes, one must perform affirmative acts. The failure to act, even when coupled

---

[5]CERCLA "operator" liability focuses upon a defendant's control.  **See *United States v. Bestfoods, Inc*., 118 S.Ct. 1876, 1887 (1998)**(CERCLA "operator" "directs the workings of, manages, or conducts the affairs of a facility").  Some courts have imposed such liability upon defendants with the authority to control the operations of a facility, while others have reserved such liability for those that actually control such operations.  **See *FMC Corp. v. Aero Industries, Inc*., 998 F.2d 842, 846 (10th Cir. 1993)**.  The Tenth Circuit has not presently chosen a side.  **998 F.2d at 846**; *United States v. Power Engineering Co*., **125 F.Supp.2d 1050, 1071 (D.Colo. 2000)**.

with the ability or authority to do so, cannot make an entity into an operator."); *Jacksonville Electric Authority v. Bernuth Corp.*, **996 F.2d 1107, 1110 (11th Cir. 1993)**(CERCLA "operator" liability requires person to "actually supervise[] the activities of" facility or "play an active role in the actual management of the enterprise"); *Kaiser Aluminum & Chemical Corp. v. Catellus Development Corp.*, **976 F.2d 1138, 1341-42 (9th Cir. 1992)**(CERCLA "operator" liability requires control over the contaminating activity and "only attaches if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment"); *Edward Hines Lumber Co. v. Vulcan Materials Co.*, **861 F.2d 155, 157-58 (7th Cir. 1988)**(independent construction contractor not subject to CERCLA "operator" liability where it did not actually operate finished wood processing plant); *United States v. Dart Industries, Inc.*, **847 F.2d 144, 146 (4th Cir. 1988)**(no CERCLA "operator" liability for defendant where no evidence of "'hands on'" activities contributing to release); *NuWest Mining Inc. v. United States*, **768 F.Supp.2d 1082, 1089 (D. Idaho 2011)**; *Veolia Es Special Services, Inc. v. Techsol Chemical Co.*, **No. 01:07-0153-RCC (S.D.W.V.), March 14, 2008 Memorandum Opinion and Order at 4-5** (unpublished)(no CERCLA "operator" liability where no allegations defendant had authority to prevent spill at time spill occurred)(EXHIBIT F); *Ryland Group, Inc.*

*v. Payne Firm, Inc*., **492 F.Supp.2d 790, 794 (S.D. Ohio 2005)**(no CERCLA "operator" liability where no allegation defendant "exercised any discretion over the activities at the site"); *Lentz v. Mason*, **961 F.Supp. 709, 716 (D.C.N.J. 1997)**(no CERCLA "operator" liability where no allegations defendants aware of disposal at property or that defendants "had the power to control the disposal activities undertaken by [another]"); *Interstate Power Co. v. Kansas City Power & Light Co*., **909 F.Supp. 1284, 1288-89 (N.D. Iowa 1994)**(no CERCLA "operator" liability for contractor that "did not have any 'authority to control' the cause of contamination at time the hazardous substances were released into the environment"); **see also** *CPC International, Inc. v. Aerojet-General Corp*., **731 F.Supp. 783, 788 (W.D.Mich. 1989)**("The most commonly adopted yardstick for determining whether a party is owner-operator under CERCLA is the degree of control that party is able to exert over the activity causing the pollution.").

## 2.   CERCLA "Arranger" Liability.

Utah's complaint also does not state a claim for CERCLA "arranger" liability because it fails to allege specific, non-conclusory facts establishing that, on August 4-5, 2015,

- Harrison Western intended to dispose of the Gold King Mine's toxic wastewater (**see** *Burlington Northern & Santa Fe Ry. Co*., **129 S.Ct. 1870, 1878-79 (2009)**(no CERCLA "arranger" liability

for defendant selling product which is later disposed by another -- without defendant's knowledge -- in a way that contaminates environment); ***Celanese Corp. Martin K. Eby Construction Co., Inc.*, 620 F.3d 529, 533 (5th Cir. 2010)**; ***Amcast Industries Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir. 1993)**(CERCLA "arranger" liability "excludes accidental spillage"));

- Harrison Western arranged for the transport or disposal of the wastewater by others (***American Cyanamid Co. v. Capuano*, 381 F.3d 6, 24 (1st Cir. 2004)**; **see *Interstate Power Co.*, 909 F.Supp. at 1288** (no CERLCA "arranger" liability for contractor that "had no 'authority to control'" disposal of hazardous substances at time of release); ***City of North Miami v. Berger*, 828 F.Supp. 401, 414 (E.D.Va. 1993)**(no CERCLA "arranger" liability where "[n]o evidence ... to suggest that contractor 'arranged' with a transporter for the delivery of hazardous wastes" to site)); or,

- Harrison Western otherwise affirmatively introduced a hazardous substance into the environment. **See *Redwing Carriers, Inc. v. Saraland Apartments*, 894 F.3d 1489, 1506 (11th Cir. 1996)**(no CERCLA "arranger" liability for contractor that failed to clean tar seeps caused by others); ***Blasland, Bouck & Lee, Inc.*, 96 F.Supp.2d at 1379-80** (CERCLA "arranger" liability requires "a party to [] take an affirmative step to introduce hazardous substances to an area").

### 3.   CERCLA "Transporter" Liability.

Utah's complaint does not state a claim for CERCLA "transporter" liability either because it fails to allege that Harrison Western "actively and substantially participate[d] in the decision-making process which ultimately identifie[d] a facility

19

for disposal." *Tippins Inc. v. USX Corp.*, **37 F.3d 87, 90 (3rd Cir. 1994)**; *Interstate*

*Power Co.*, **909 F.Supp. at 1289** (no CERCLA "transporter" liability for contractor

that "had no authority or opportunity to control or exercise any discretion" at the

time of hazardous substances where moved and where contractor did not select any

site for disposal); **see** *United States v. Hardage*, **985 F.2d 1427, 1435 (10th Cir.**

**1993)**(CERCLA "transporter" liability "predicated on site selection by the

transporter").

> ### C.   Utah Has Failed To Allege Facts Sufficient To Establish Liability For Harrison Western As A "Response Action Contractor" Under CERCLA.

Utah has also alleged that Harrison Western was a CERCLA "response action

contractor." (EXHIBIT A at ¶ 66).

A CERCLA "response action contractor" is not strictly liable like a "covered

person." **42 U.S.C. § 9619(a)(2)**. A CERCLA "response action contractor" is only

liable if it is shown to have acted negligently, and if it is also shown that its

negligence caused a release of a hazardous substance. **42 U.S.C. § 9619(a)(1)-(2)**;

***Blasland, Bouck & Lee, Inc.*, 96 F.Supp.2d at 1380**.

Utah, however, has failed to allege any specific, non-conclusory facts

establishing any negligence on the part of Harrison Western or that any action by

Harrison Western "caused" the August 5, 2015 spill.

Instead, Utah has simply -- and conclusorily -- alleged that "Defendants' negligence, gross negligence or intentional conduct caused or contributed to the release of hazardous substances from the mines." (EXHIBIT A at ¶ 66). Those allegations, of course, are inadequate as a matter of law (**see** *Nasious*, **492 F.3d at 1163**; **see also** *Cheeks v. Fort Myer Construction Corp.*, **71 F.Supp.3d 163, 168 (D.D.C. 2014)**)(pleadings "alleging a variety of bad acts without factual support or clear allegation which, if any, defendant engaged in said bad acts are insufficient" as a matter of law); *McDaniel v. Denver Lending Group, Inc.*, **2009 U.S.Dist.LEXIS 125766 * 11-15 (Colo.)**)(unpublished)(recommending dismissal of consumer protection act claim where plaintiff failed "to include specific allegations so as to put [particular defendants] on notice of what conduct or representations they made that were allegedly false or misleading"), *recommendation of magistrate judge accepted*, **2009 U.S.Dist.LEXIS 55897 (Colo.)**)(unpublished)), especially where, as here, Utah's specific, non-conclusory allegations regarding Harrison Western establish that it acted appropriately, and that it was not present at the Gold King Mine on August 4-5, 2015 (EXHIBIT A at ¶ 80), when -- unbeknownst to it (EXHIBIT D at ¶¶ 22-23) -- "EPA's On Site Team" "created" and followed their own excavation at the adit (EXHIBIT A at ¶¶ 41-49, 51-54), causing the spill.

**D.      Utah Has Failed To Allege Facts Sufficient To State A Claim For Negligence/Gross Negligence.**

A claim for negligence under Colorado law requires the following allegations:

- the plaintiff had damages;
- the defendant was negligent; and,
- the defendant's negligence was a cause of the plaintiff's damages.[6] **Colorado Jury Instructions – Civil 9:1 (2017)**.

With regard to "cause," factual allegations are required to establish the defendant's negligence actually caused the plaintiff's damages (**see Colorado Jury Instructions – Civil 9:18**), and that the plaintiff's damages were a reasonably foreseeable result of the defendant's negligence. **See Colorado Jury Instructions – Civil 9:21 (2017)**.

Here, Utah has failed to allege any specific, non-conclusory facts establishing

- any negligence or gross negligence on the part of Harrison Western;
- how such (unalleged) negligence or gross negligence caused the Gold King Mine spill; or,
- how Harrison Western could have reasonably foreseen that, after preparing a revised construction plan, "EPA's On Site Team" would separately "create" and implement a materially-different

---

[6] Colorado law governs Utah's common law tort claims against Harrison Western. It does because the spill occurred in Colorado -- at the Gold King Mine -- making Colorado the "point source" of Utah's (alleged) damages. *International Paper Co. v. Ouellette*, 107 S.Ct. 805, 809 (1987).

> excavation plan over two weeks prior to Harrison
> Western's anticipated return to the Gold King Mine.

Instead, Utah has simply -- and conclusorily -- alleged that "Defendants acted with negligence, gross negligence, carelessly, recklessly, intentionally and wantonly in managing and disposing contaminated wastewater in the Gold King Mine and other such mines, such that they directly and proximately caused contamination of the San Juan River, Lake Powell and the surrounding environs." (EXHIBIT A at ¶ 79). Those allegations are also inadequate as a matter of law (**see *Nasious*, 492 F.3d at 1163**; **see also *Cheeks*, 71 F.Supp.3d at 168**; ***McDaniel*, 2009 U.S.Dist.LEXIS 125766 * 11-15** (unpublished)), especially where, as here, Utah's specific, non-conclusory allegations regarding Harrison Western establish that it acted appropriately, and that it was not present at the Gold King Mine on August 4-5, 2015 (EXHIBIT A at ¶ 80), when -- unbeknownst to it (EXHIBIT D at ¶¶ 22-23) -- "EPA's On Site Team" "created" and followed their own excavation plan at the adit (EXHIBIT A at ¶¶ 41-49, 51-54), causing the spill.

## E. Utah Has Failed To Allege Facts Sufficient To State A Claim For Public Nuisance.

"A public nuisance is the doing or failure to do something that injuriously affects the safety, health, or morals of the public or works some substantial annoyance, inconvenience, or injury to the public." ***State v. Mill*, 887 P.2d 993,**

1002 (**Colo. 1994**).  A defendant has liability for a public nuisance only "when he carries on the activity [causing the nuisance]" or "participates to a substantial extent in carrying it on." **RESTATEMENT (SECOND) OF TORTS § 834 (1965)**.

Here, Utah has failed to allege any specific, non-conclusory facts establishing Harrison Western participated in the "creat[ion] [of] a plan [by "EPA's On Site Team"] to conduct excavation activities" at the Gold King Mine or that Harrison Western participated in the actual excavation of the adit on August 4-5, 2015.

Instead, Utah has simply -- and conclusorily -- alleged that "Defendants' negligent, grossly negligent, reckless, and/or intentional conduct caused the [spill] on August 5, 2015." (EXHIBIT A at ¶ 87).  Those allegations are likewise inadequate as a matter of law (**see** *Nasious*, **492 F.3d at 1163**; **see also** *Cheeks*, **71 F.Supp.3d at 168**; *McDaniel*, **2009 U.S.Dist.LEXIS 125766 \* 11-15** (unpublished)), especially where, as here, Utah's specific, non-conclusory allegations regarding Harrison Western establish that it acted appropriately, and that it was not present at the Gold King Mine on August 4-5, 2015 (EXHIBIT A at ¶ 80), when -- unbeknownst to it (EXHIBIT C at ¶¶ 22-23) -- "EPA's On Site Team" "created" and followed their own excavation plan at the adit (EXHIBIT A at ¶¶ 41-49, 51-54), causing the spill.

**F.      Utah Has Failed To Allege Facts Sufficient To State A Claim For Trespass.**

A claim for trespass requires, among other things, an allegation that the defendant acted intentionally.  **See Colorado Jury Instructions-Civil 18:1 (2017)**. In that regard, a person is liable for trespass if he or she "intentionally enter[s] the land possessed by someone else, or caus[es] a thing or third person to enter the land." *Public Service Co. v. Van Wyk,* **27 P.3d 377, 389 (Colo. 2001)**.  "It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foregoing matter."  RESTATEMENT (SECOND) OF TORTS § 158, cmt. *i* (1965).

Here, Utah has alleged no specific, non-conclusory facts sufficient to establish that Harrison Western acted intentionally with regard to the Gold King Mine spill or that it otherwise "caused" the contaminated wastewater to enter into any Utah waterway.

Instead, Utah has simply -- and conclusorily -- alleged that "the intentional acts of the EPA[, Harrison Western and others] caused a breach in the adit, resulting in the [spill]" (EXHIBIT A at ¶ 55), and that "Defendants … intentionally failed to properly control and dispose of contaminated wastewater," causing it to enter into Utah's waterways.[7]  (EXHIBIT A at ¶ 101).  Those allegations are also inadequate

---

[7]Utah also alleges that Harrison Western negligently and recklessly caused a trespass.  (EXHIBIT A at ¶ 101).  Colorado law, however, does not recognize such

as a matter of law (**see** ***Nasious***, **492 F.3d at 1163**; **see also** ***Cheeks***, **71 F.Supp.3d at 168**; ***McDaniel***, **2009 U.S.Dist.LEXIS 125766 * 11-15** (unpublished)), especially where, as here, Utah's specific, non-conclusory allegations regarding Harrison Western establish that it acted appropriately, and that it was not present at the Gold King Mine on August 4-5, 2015 (EXHIBIT A at ¶ 80), when -- unbeknownst to it (EXHIBIT D at ¶¶ 22-23) -- "EPA's On Site Team" "created" and followed their own excavation plan at the adit (EXHIBIT A at ¶¶ 41-49, 51-54), causing the spill.

## III. ALL UTAH'S COMMON LAW TORT CLAIMS ARE BARRED TO THE EXTENT THEY SEEK TO IMPOSE JOINT-AND-SEVERAL LIABILITY.

Utah seeks to impose joint-and-several liability between defendants in connection with its common law tort claims. (EXHIBIT A at ¶¶ 83, 94, 105-06). Utah also prays for an order, "[d]eclaring that all Defendants are jointly and severally liable for all costs incurred by the State of Utah to abate the nuisance and cure the trespass in the San Juan River and Lake Powell." (EXHIBIT A at ¶ 127).

Colorado, however, has abolished the doctrine of joint-and-several liability. **C.R.S. § 13-21-111.5(1)**.

---

a tort for negligent trespass. **See** ***Burt v. Beautiful Savior Lutheran Church***, **809 P.2d 1064, 1067 (Colo.App. 1992)**.

Under the circumstances, then, Utah's common law tort claims are barred to the extent they seek joint-and-several liability between defendants.  **See *Nitzsche v. Stein, Inc*., 797 F.Supp. 595, 601-02 (N.D. Ohio 1992)**(striking prayer for relief for joint-and-several liability); ***Carlson v. Armstrong World Industries, Inc*., 693 F.Supp. 1073, 1079 (S.D.Fla. 1987)**(striking "punitive damages based on joint and several liability").

## IV.   ALL UTAH'S COMMON LAW TORT CLAIMS ARE BARRED TO THE EXTENT THEY SEEK PUNITIVE DAMAGES.

Just as Utah seeks to impose joint-and-several liability between defendants (EXHIBIT A at ¶¶ 83, 94, 105-06), it has also alleged a right to (EXHIBIT A at ¶¶ 84, 97, 107), and prayed for (EXHIBIT A at ¶ 124), an award of punitive damages.

Colorado law, however, strictly prohibits a request for punitive damages within an initial pleading.  **C.R.S. § 13-21-102(1.5)(a)**; **see *Mrs. Colorado-America, Inc. v. Mrs. Colorado United States Pageant*, 2007 U.S.Dist.LEXIS 10199 * 10 (Colo.)**(unpublished)(concluding Colorado statute barring prayer for punitive damages within initial pleading to be substantive rule of state law).  Moreover, there are absolutely no allegations within Utah's complaint sufficient to establish that Harrison Western's conduct was fraudulent, malicious or willful and wanton.  **See C.R.S. § 13-21-102(1)(a)**.

Under the circumstances, then, Utah's common law tort claims are further barred to the extent they seek punitive damages.  ***Mrs. Colorado-America, Inc.*, 2007 U.S.Dist.LEXIS 10199 * 12** (unpublished)(striking premature request for punitive damages).

## CONCLUSION

For the aforementioned reasons, defendant Harrison Western Construction Corporation moves now, pursuant to **Fed.R.Civ.P. 12(b)(2)** and **12(b)(6)**, to dismiss plaintiff State of Utah's complaint as well as for any other such relief deemed just and proper.

DATED THIS 15TH DAY OF DECEMBER, 2017.

Respectfully Submitted,

HALL & EVANS, LLC


By:[*s/ Brian Molzahn*]_____

Brian Molzahn (admitted *pro hac vice*)
HALL & EVANS, LLC
1001 Seventeenth Street Suite 300
Denver, Colorado 80202
(303) 628-3300
(303) 628-3368 [facsimile]
langd@hallevans.com
molzahnb@hallevans.com
**COUNSEL     FOR     DEFENDANT
HARRISON                  WESTERN
CONSTRUCTION CORPORATION**

## <u>CERTIFICATION OF WORD-COUNT LIMIT</u>

Pursuant to **DUCivR 7-1(a)(3)(A)**, I hereby certify that the foregoing **MOTION OF DEFENDANT HARRISON WESTERN CONSTRUCTION CORPORATION TO DISMISS PLAINTIFF STATE OF UTAH'S COMPLAINT** does not exceed the word-count limit for motions filed pursuant to **Fed.R.Civ.P. 12(b)**.

[*s/ Brian Molzahn*]_____

Brian Molzahn (admitted *pro hac vice*)
HALL & EVANS, LLC
1001 Seventeenth Street Suite 300
Denver, Colorado 80203
(303) 628-3300
(303) 628-3368 [facsimile]
langd@hallevans.com
molzahnb@hallevans.com
**COUNSEL FOR DEFENDANT HARRISON WESTERN CONSTRUCTION CORPORATION**

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of December 2017, a true and correct copy of the foregoing **MOTION OF DEFENDANT HARRISON WESTERN CONSTRUCTION CORPORATION TO DISMISS PLAINTIFF STATE OF UTAH'S COMPLAINT** was, unless otherwise noted, served on the following *via* CM/ECF system:

**COUNSEL OF RECORD**

[*s/ Martha S. Fiser*]_____

Legal Secretary to
Brian Molzahn (admitted *pro hac vice*)
HALL & EVANS, LLC
1001 Seventeenth Street Suite 300
Denver, Colorado 80203
(303) 628-3300
(303) 628-3368 [facsimile]
langd@hallevans.com
molzahnb@hallevans.com
**COUNSEL FOR DEFENDANT HARRISON WESTERN CONSTRUCTION CORPORATION**