Terry D. Avchen (*pro hac vice*)
Peter C. Sheridan (*pro hac vice*)
Andriy R. Pazuniak (*pro hac vice*)
GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP
Attorneys for Defendant Environmental Restoration, LLC
10250 Constellation Blvd., 19th Fl.
Los Angeles, California 90067
Telephone: (310) 553-3000

John A. Adams (Bar No. 0023)
E. Blaine Rawson (Bar No. 7289)
RAY QUINNEY & NEBEKER
Attorneys for Defendant Environmental Restoration, LLC
36 South State Street
Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE STATE OF UTAH,<br><br>   Plaintiff,<br><br>  v.<br><br>ENVIRONMENTAL RESTORATION, LLC;<br>HARRISON WESTERN CORPORATION;<br>KINROSS GOLD CORPORATION;<br>KINROSS GOLD U.S.A., INC.;<br>SUNNYSIDE GOLD CORPORATION; and<br>GOLD KING MINES CORPORATION,<br><br>   Defendants. | Case No. 2:17-cv-00866-TS<br><br>**DEFENDANT ENVIRONMENTAL<br>RESTORATION, LLC'S MOTION TO<br>DISMISS AND MOTION TO STRIKE<br>(ORAL ARGUMENT REQUESTED)**<br><br>Senior Judge Ted Stewart, U.S.D.J.<br><br>[Motion to Transfer under 28 U.S.C. § 1407<br>filed with the Judicial Panel on Multidistrict<br>Litigation on December 11, 2017<br>(MDL No. 2824)] |

<u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION ....................................................................................... 1

MEMORANDUM IN SUPPORT OF ER'S MOTION TO DISMISS AND TO STRIKE ........... 3

I.  INTRODUCTION ................................................................................ 3

II.  STATEMENT OF FACTS ALLEGED BY PLAINTIFF ................................ 5

III.  STANDARD FOR A MOTION TO DISMISS AND MOTION TO STRIKE ................. 6

IV.  ER IS NOT LIABLE UNDER CERCLA ........................................................ 7

    A.  ER Was Not an "Operator" ........................................................ 7

    B.  ER Was Not an "Arranger" ........................................................ 9

    C.  ER Was Not a "Transporter" ...................................................... 11

V.  CERCLA PREEMPTS PLAINTIFF'S CLAIMS FOR MONETARY DAMAGES ........ 12

VI.  ER IS NOT LIABLE UNDER ANY UTAH STATE STATUTE ................................... 13

VII.  CERCLA STRIPS THE COURT OF JURISDICTION OVER PLAINTIFF'S
    STATE LAW CLAIMS ............................................................................ 14

    A.  EPA Has "Selected" a Removal Action for Purposes of § 9613(h) .................... 14

    B.  Plaintiff's State Law Claims Challenge EPA's Ongoing Removal Actions ......... 15

    C.  Section 9613(h) Also Applies to Plaintiff's Claims for Monetary Damages ....... 16

VIII.  THE GOVERNMENT CONTRACTOR DEFENSE SHIELDS ER FROM
    LIABILITY FOR PLAINTIFF'S STATE LAW CLAIMS ............................................. 17

    A.  The Government Contractor Defense Applies to ER's Alleged Conduct ........... 17

        1.  ER's Alleged Conduct Involved "Uniquely Federal Interests" ................ 18

        2.  There Is a "Significant Conflict" Between Federal Interests and
        State Law ................................................................................ 18

        3.  The Alleged Acts Fall Within the FTCA's Discretionary Function
        Exception ............................................................................... 19

            a.  The alleged acts were "a matter of choice" for EPA and its
            OSCs ...................................................................... 20

            b.  The alleged acts were grounded in policy ................................. 22

    B.  ER Is Entitled to Protection as a Government Contractor ........................ 23

IX.  PLAINTIFF'S JOINT AND SEVERAL LIABILITY AND PUNITIVE DAMAGE
    CLAIMS SHOULD BE STRICKEN ............................................................. 25

X.  CONCLUSION ..................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### Federal Cases

*Ackerman v. Bean Dredging LLC*,
  589 F.3d 196 (5th Cir. 2009) .................................................................................. 6

*Am. Cyanamid Co. v. Capuano*,
  381 F.3d 6 (1st Cir. 2004) ..................................................................................... 10

*Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*,
  No. 05-cv-01870, 2007 WL 160951 (D. Colo. Jan. 17, 2007) ................................. 25

*Amcast Indus. Corp. v. Detrex Corp.*,
  2 F.3d 746 (7th Cir. 1993) ..................................................................................... 10

*Anacostia Riverkeeper v. Washington Gas Light Co.*,
  892 F. Supp. 2d 161 (D.D.C. 2012) ........................................................................ 14

*Arkansas v. Oklahoma*,
  503 U.S. 91 (1992) ................................................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 6

*Berkovitz v. United States*,
  486 U.S. 531 (1988) ............................................................................................... 19

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988) ..................................................................................... 17, 18, 24

*Burlington N. & Santa Fe Ry Co. v. United States*,
  556 U.S. 599 (2009) ............................................................................................... 10

*Cannon v. Gates*,
  538 F.3d 1328 (10th Cir. 2008) ...................................................................... 14, 15, 16

*Chevron Mining Inc. v. United States*,
  863 F.3d 1261 (10th Cir. 2017) ............................................................................. 10

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Cisco v. United States*,
   768 F.2d 788 (7th Cir. 1985) ............................................................................ 18

*Coppola v. Smith*,
   19 F. Supp. 3d 960 (E.D. Cal. 2014) ................................................................ 12

*Daigle v. Shell Oil Co.*,
   972 F.2d 1527 (10th Cir. 1992) .................................................... 19, 20, 21, 22

*Elder v. United States*,
   312 F.3d 1172 (10th Cir. 2002) ........................................................................ 21

*Fed. Nat'l Mortg. Ass'n v. Milasinovich*,
   161 F. Supp. 3d 981 (D.N.M. 2016) .................................................................. 7

*FMC Corp. v. Aero Indus., Inc.*,
   998 F.2d 842 (10th Cir. 1993) ............................................................................ 7

*Garcia v. U.S. Air Force*,
   533 F.3d 1170 (10th Cir. 2008) ........................................................................ 21

*Hardscrabble Ranch, L.L.C. v. United States*,
   840 F.3d 1216 (10th Cir. 2016) ........................................................................ 23

*Int'l Paper Co. v. Ouellette*,
   479 U.S. 481 (1987) .......................................................................................... 13

*Interstate Power Co. v. Kansas City Power & Light Co.*,
   909 F. Supp. 1284 (N.D. Iowa 1994) ............................................................ 9, 11

*Johnson v. U.S. Dep't of Interior*,
   949 F.2d 332 (10th Cir. 1991) ...................................................... 20, 21, 22, 23

*Kansas v. Colorado*,
   206 U.S. 46 (1907) ............................................................................................ 13

*Key Tronic Corp. v. United States*,
   511 U.S. 809 (1994) ...................................................................................... 8, 20

*Las Vegas Ice & Cold Storage Co. v. Far W. Bank*,
   893 F.2d 1182 (10th Cir. 1990) ........................................................................ 25

*Lindsey v. McClure*,
   136 F.2d 65 (10th Cir. 1943) ............................................................................ 13

TABLE OF AUTHORITIES

Page

*Miller v. U.S. Dep't of Transp.*,
   710 F.2d 656 (10th Cir. 1983) ................................................................. 21

*Morrison Enters. v. McShares, Inc.*,
   302 F.3d 1127 (10th Cir. 2002) ............................................................... 12

*New Mexico v. Gen. Elec. Co.*,
   467 F.3d 1223 (10th Cir. 2006) ......................................................... 12, 16

*Nitzsche v. Stein, Inc.*,
   797 F. Supp. 595 (N.D. Ohio 1992) ........................................................ 25

*Richland-Lexington Airport Dist. v. Atlas Props., Inc.*,
   854 F. Supp. 400 (D.S.C. 1994) ......................................................... 17, 24

*Ryland Group Inc. v. Payne Firm, Inc.*,
   492 F. Supp. 2d 790 (S.D. Ohio 2005) ................................................... 7, 9

*Tippins Inc. v. USX Corp.*,
   37 F.3d 87 (3d Cir. 1994) ........................................................................ 11

*U.S. Fid. & Guar. Co. v. United States*,
   837 F.2d 116 (3d Cir. 1988) ................................................. 19, 20, 21, 22, 23

*United States v. Bestfoods*,
   524 U.S. 51 (1998) .................................................................................... 7

*United States v. City & County of Denver*,
   100 F.3d 1509 (10th Cir. 1996) ............................................................... 15

*United States v. Hardage*,
   985 F.2d 1427 (10th Cir. 1993) ............................................................... 11

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
   467 U.S. 797 (1984) ........................................................................... 19, 23

*United States v. Shell Oil Co.*,
   294 F.3d 1045 (9th Cir. 2002) ................................................................. 11

*Wasatch Equality v. Alta Ski Lifts Co.*,
   820 F.3d 381 (10th Cir. 2016) ................................................................... 8

*Washington State Dep't of Transp. v. EPA*,
   917 F.2d 1309 (D.C. Cir. 1990) ............................................................... 15

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Yearsley v. W.A. Ross Constr. Co.*,
    309 U.S. 18 (1940) ........................................................................................... 17, 24

**Federal Statutes**

28 U.S.C. § 2680(a) ............................................................................................. 17

40 C.F.R. § 300.120(a) ........................................................................................... 8

40 C.F.R. § 300.135 ............................................................................................... 8

40 C.F.R. § 300.410 ............................................................................................... 5

40 C.F.R. § 300.415 ............................................................................................... 5

40 C.F.R. § 300.5 ............................................................................................... 5, 8

42 U.S.C. § 9601(16) ........................................................................................... 12

42 U.S.C. § 9601(20)(A) ....................................................................................... 7

42 U.S.C. § 9601(23) ........................................................................................... 15

42 U.S.C. § 9604 ................................................................................................. 14

42 U.S.C. § 9607(a) ............................................................................................... 1

42 U.S.C. § 9607(a)(1)–(4) ................................................................................... 7

42 U.S.C. § 9607(a)(3) ......................................................................................... 10

42 U.S.C. § 9607(a)(4) ......................................................................................... 12

42 U.S.C. § 9607(a)(4)(C) ................................................................................ 4, 12

42 U.S.C. § 9607(f)(1) ...................................................................................... 4, 12

42 U.S.C. § 9613(g)(2) ........................................................................................... 1

42 U.S.C. § 9613(h) .......................................................................... 2, 4, 14, 15, 16

## TABLE OF AUTHORITIES

Page

### State Statutes

Colo. Rev. Stat. § 13-21-102(1.5)(a) ............................................................................. 25

Colo. Rev. Stat. § 13-21-111.5(1) ................................................................................. 25

Utah Code Ann. § 19-5-107(1)(a) .................................................................................. 13

Utah Code Ann. § 19-5-112(2) ...................................................................................... 13

Utah Code Ann. § 19-6-102(10) ..................................................................................... 13

Utah Code Ann. § 19-6-113(2) ...................................................................................... 13

### Federal Rules

81 Fed. Reg. 62397 (Sept. 9, 2016) ............................................................................... 15

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1

Fed. R. Civ. P. 12(f) ............................................................................................... 1, 7, 25

## NOTICE OF MOTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f), Defendant Environmental Restoration, LLC ("ER"), by and through its counsel, Glaser Weil Fink Howard Avchen & Shapiro LLP and Ray Quinney & Nebeker, hereby moves (i) to dismiss the Complaint (Dkt. 2) filed by Plaintiff State of Utah ("Plaintiff"), (ii) to strike Plaintiff's allegations that ER is "jointly and severally liable" for Plaintiff's state law claims, and (iii) to strike Plaintiff's claims for punitive damages. In support of its Motions, ER states:

1.     Plaintiff's First and Second Claims for Relief against ER under CERCLA, 42 U.S.C. §§ 9607(a) and 9613(g)(2), should be dismissed because ER cannot be held liable under any of the three theories of liability that Plaintiff alleges against ER (operator, arranger, or transporter). First, ER cannot be held liable as an operator under CERCLA because Plaintiff fails to plead facts showing that ER had the requisite control over the actions that Plaintiff alleges caused a release of hazardous substances. Second, ER cannot be held liable as an arranger because Plaintiff does not (and cannot) allege that (i) the underlying release was anything other than an accident, or (ii) ER contracted or otherwise arranged to have another party transport, dispose of or treat the allegedly hazardous substances that were released. Finally, ER cannot be held liable as a transporter because Plaintiff does not (and cannot) allege facts showing that ER had the requisite control over selecting the disposal site for the released substances.

2.     Plaintiff's Third, Fourth and Fifth Claims for Relief against ER under state tort law should be dismissed because CERCLA preempts Plaintiff's claims for unrestricted monetary damages under state common law. In the alternative, Plaintiff's claims for such damages should be stricken. (Compl. ¶¶ 58, 82, 92, 95, 104, 124.)

3.      Plaintiff's Sixth and Seventh Claims for Relief against ER under the Utah Water Quality Act and Utah Solid and Hazardous Waste Act should be dismissed because the alleged release of hazardous substances occurred in Colorado and, therefore, Colorado law governs Plaintiff's state law claims. Utah's state laws are inapplicable.

4.      Plaintiff's Third, Fourth, Fifth, Sixth and Seventh Claims for Relief against ER under state law should be dismissed for lack of jurisdiction. Plaintiff's state law claims present a challenge to an ongoing response action by the U.S. Environmental Protection Agency ("EPA"), thus CERCLA strips the Court of jurisdiction over such claims. 42 U.S.C. § 9613(h).

5.      Plaintiff's Third, Fourth, Fifth, Sixth and Seventh Claims for Relief against ER under state law should be dismissed because Plaintiff pleads facts establishing that ER is protected from state law liability under the "Government Contractor Defense."

6.      Plaintiff's allegations that ER is "jointly and severally" liable for Plaintiff's state law claims (Compl. ¶¶ 83, 94, 96, 105, 106, 127) should be stricken because Colorado has abolished joint and several liability by statute in favor of a pro rata approach.

7.      Plaintiff's claims for punitive damages (Compl. ¶¶ 84, 97, 107, 124) should be stricken because Plaintiff cannot claim punitive damages in initial pleadings under Colorado law.

8.      ER incorporates by reference the arguments and authorities set forth in the Memorandum that follows this Notice of Motion, and the exhibits attached thereto.

9.      In light of the range of issues involved, ER respectfully requests oral argument.

WHEREFORE, ER respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice, strike Plaintiff's allegations that ER is "jointly and severally" liable for Plaintiff's state law claims, and strike Plaintiff's claims for punitive damages.

## MEMORANDUM IN SUPPORT OF ER'S MOTION TO DISMISS AND TO STRIKE

**I.   INTRODUCTION**

Plaintiff State of Utah ("Plaintiff") claims that Defendant Environmental Restoration, LLC ("ER") is liable for monetary damages, injunctive relief and civil penalties under CERCLA, state tort causes of action, and Utah state environmental laws based on the release of allegedly hazardous substances from the Gold King Mine in southwestern Colorado ("Gold King") on August 5, 2015 (the "Release"). Under prevailing law, Plaintiff's claims against ER should be dismissed for the following reasons: there are no facts pled to support three separate grounds for CERCLA liability; CERCLA preempts Plaintiff's requested relief; Utah law does not apply when the "point source" of an interstate discharge is in Colorado; an EPA response action is undeniably underway, which bars the Court from proceeding on Plaintiff's state law claims; and ER is protected from state law liability under the "Government Contractor Defense."

First, Plaintiff fails to state a claim against ER under CERCLA (First and Second Claims for Relief). While Plaintiff makes the bald allegation that ER was an "operator," "arranger" and "transporter," Plaintiff fails to state any supporting facts. Indeed, these theories are belied by Plaintiff's own admissions. As to "operator" liability, Plaintiff does not allege any facts showing that ER controlled the relevant activities at Gold King. To the contrary, Plaintiff admits that ER was a contractor for the U.S. Environmental Protection Agency ("EPA"), which had the authority to control ER's work under the parties' contract and oversaw ER's alleged activities at Gold King. Plaintiff also admits that EPA was undertaking a removal action under CERCLA, which gave EPA broad authority over Gold King. As to "arranger" liability, Plaintiff admits that the sub-contractor ER allegedly hired was <u>not</u> on-site at the time of the Release, thus Plaintiff has

3

not alleged—and cannot allege—that ER arranged to have another party transport or dispose of the substances that were released from Gold King. As to "transporter" liability, Plaintiff fails to allege that ER selected a disposal site. Thus, ER cannot be liable under CERCLA.

Second, CERCLA preempts Plaintiff's state law claims for unrestricted monetary damages (Third through Fifth Claims for Relief) based on alleged damages to natural resources (the San Juan River and Lake Powell). *See* 42 U.S.C. §§ 9607(a)(4)(C), 9607(f)(1).

Third, ER cannot be held liable under Utah's state environmental statutes (Sixth and Seventh Claims for Relief) because Utah's state laws are inapplicable. The "point source" of the alleged discharge is in Colorado, thus Colorado law controls.

Fourth, the Court lacks jurisdiction over all of Plaintiff's state law claims (Third through Seventh Claims for Relief) because CERCLA strips federal courts of jurisdiction over lawsuits like this one that "challenge" an ongoing EPA response action. 42 U.S.C. § 9613(h).

Fifth, ER is protected from all state law liability (Third through Seventh Claims for Relief) under the "Government Contractor Defense." Plaintiff admits that EPA "specified" the work that ER was to perform at Gold King under the parties' contract (Compl. ¶ 34), and EPA's decisions were protected discretionary functions under the Federal Tort Claims Act ("FTCA"). Plaintiff also admits that EPA was on-site at Gold King at all relevant times (Compl. ¶¶ 41, 51), and does not allege that ER deviated from EPA's directions. Under similar facts, the Supreme Court has held that a federal contractor like ER is immune from state law liability.

Finally, Plaintiff's "joint and several" liability and punitive damage claims (Compl. ¶¶ 83, 84, 94, 96, 97, 105, 106, 107, 124, 127) should be stricken because Colorado has abolished joint and several liability and bars Plaintiff from claiming punitive damages now.

## II.   STATEMENT OF FACTS ALLEGED BY PLAINTIFF

Gold King is an abandoned gold mine located in the San Juan Mountains in southwestern Colorado. (Compl. ¶ 15.) Beginning in 1996, acid mine drainage ("AMD") began discharging from Gold King after Defendant Sunnyside Gold Corporation installed a bulkhead in the "American Tunnel," which was a passageway for the Sunnyside Mine, another mine located in the San Juan Mountains near Gold King. (Compl. ¶¶ 16, 18, 19.)

Over the next 18 years, the condition of Gold King deteriorated and the abandoned mine posed an environmental hazard that both the Colorado Division of Reclamation, Mining and Safety ("DRMS") and EPA sought to address. In 2007, increased AMD flow caused a landslide that blocked the entrance to Gold King, which trapped AMD inside the mine's adit. (Compl. ¶ 28.) Recognizing the potential for a "blowout" as AMD continued to flood Gold King, DRMS attempted reclamation efforts in 2009, but failed. (Compl. ¶¶ 29, 30.) DRMS abandoned the site without installing proper drainage and the threat of a blowout remained. (Compl. ¶¶ 30, 31.)

In 2014, DRMS asked EPA to "reopen and stabilize the adit." (Compl. ¶ 31.) In response to DRMS' request, "EPA began a removal site evaluation to investigate the possibility of opening the collapsed mine portal" (Compl. ¶ 32), which is an initial step in conducting a removal action under CERCLA. *See* 40 C.F.R. §§ 300.410, 300.415. EPA appointed Steven Way as "the EPA project leader and lead On Scene Coordinator ('OSC')" at Gold King. (Compl. ¶ 39.) When Way later left for vacation, he "was replaced at the Gold King site by the backup OSC, Mr. Hays Griswold, on those days." (Compl. ¶ 40.) As OSCs, both Way and Griswold had the authority "to coordinate and direct responses" at Gold King. *See* 40 C.F.R. § 300.5.

EPA retained ER as EPA's "Emergency and Rapid Response Service (ERRS)" contractor in order to assist with EPA's removal action at Gold King, and issued a "task order" that Plaintiff alleges "specified" the work that ER was "required" to perform. (Compl. ¶¶ 8, 32–35.)

After EPA began its "removal site evaluation" in 2014, "seepage" leaked from the Gold King adit and work was suspended. (Compl. ¶¶ 32, 36, 38.) EPA and its "On Site Team" returned to Gold King in the summer of 2015. (Compl. ¶¶ 40–41.) Plaintiff alleges that on August 4, 2015, EPA and its On Site Team "created a plan to conduct excavation activities" at Gold King (Compl. ¶ 41), and continued to perform work the next day, on August 5, 2015 (Compl. ¶ 51). Plaintiff admits that EPA remained on site at Gold King while the work was performed. (Compl. ¶¶ 41, 51.) At some point on August 5, a release from Gold King occurred, allegedly discharging three million gallons of AMD into the Animas River. (Compl. ¶ 56.)

Plaintiff alleges that AMD released from Gold King traveled "through the Animas and San Juan River system to Lake Powell in the State of Utah." (Compl. ¶ 57.)

### III.   STANDARD FOR A MOTION TO DISMISS AND MOTION TO STRIKE

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts have dismissed claims based on the grounds that ER asserts in this Motion. *See Ackerman v. Bean Dredging LLC*, 589 F.3d 196, 206–07 (5th Cir. 2009) (affirming dismissal based on the

Government Contractor Defense); *Ryland Group, Inc. v. Payne Firm, Inc.*, 492 F. Supp. 2d 790,

794 (S.D. Ohio 2005) (dismissing CERCLA claim against contractor based on lack of control).

      The Court may strike "any redundant, immaterial, impertinent, or scandalous matter."

Fed. R. Civ. P. 12(f). An allegation is immaterial if it has "no possible bearing on the

controversy." *Fed. Nat'l Mortg. Ass'n v. Milasinovich*, 161 F. Supp. 3d 981, 993 (D.N.M. 2016).

## IV.   ER IS NOT LIABLE UNDER CERCLA.

      CERCLA imposes liability on four categories of responsible persons: owners, operators,

arrangers, and transporters. *See* 42 U.S.C. § 9607(a)(1)–(4). Plaintiff claims that ER is liable in

this case under three of these categories: operator, arranger and/or transporter. (Compl. ¶¶ 63, 64,

65.) All three of Plaintiff's theories fail as a matter of law.

### A.   ER Was Not an "Operator."

      An operator is "someone who directs the workings of, manages, or conducts the affairs of

a facility." *United States v. Bestfoods*, 524 U.S. 51, 66 (1998). *See also* 42 U.S.C. § 9601(20)(A).

In *Bestfoods*, the Supreme Court explained that "the verb 'to operate' . . . obviously meant

something more than mere mechanical activation of pumps and valves." *Id.* at 71. Consistent

with the Supreme Court's analysis in *Bestfoods*, the Tenth Circuit has recognized that control is a

prerequisite for operator liability and, therefore, a defendant must "have exercised actual control"

or had "the authority to control" a facility in order to be an operator under CERCLA. *FMC Corp.

v. Aero Indus., Inc.*, 998 F.2d 842, 846 (10th Cir. 1993).

      Under either "control" test, ER cannot be liable as an operator based on Plaintiff's

allegations. ER could not have had the authority to control the alleged activities at Gold King

because, as Plaintiff admits, EPA initiated a removal action at Gold King in 2014. (Compl. ¶¶ 31,

32.) Accordingly, under federal law, EPA and its OSCs (<u>not</u> ER) had the legal authority to direct and control the activities at Gold King. *See* 40 C.F.R. § 300.5 (OSCs "coordinate and direct" response actions); 40 C.F.R. § 300.120(a) (an OSC "directs response efforts"); 40 C.F.R. § 300.135 (an OSC "shall direct response efforts"); *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994) (CERCLA "grants the President broad power to command government agencies and private parties to clean up hazardous waste sites"). EPA's authority to control the activities at Gold King, including the alleged actions of ER, is further established by two documents that Plaintiff relies on in its Complaint: (i) the ERRS contract (Ex. A), and (ii) an "ERRS contract task order" (Ex. B). (Compl. ¶¶ 32–35.) *See Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016) (on a motion to dismiss, a court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"). The ERRS contract expressly provides that ER "shall take any response action, <u>under the direction of the Ordering Officer</u>," which is defined as the "EPA On-Scene Coordinator (OSC)." (Ex. A at Attachment 1, ¶ I.E.) The ERRS contract task order likewise provides that (i) activities would be "<u>directed</u> by EPA's On-Scene Coordinator"; (ii) work would be performed under work plans that were "to be submitted to the OSC for approval"; and (iii) work would be performed "[a]s determined appropriate by the OSC." (Ex. B at 1–3.) Based on the express language of the ERRS contract and task order, EPA's authority to control ER and the alleged activities at Gold King cannot be reasonably questioned.

Plaintiff also fails to allege any facts showing that ER "exercised actual control." Plaintiff's allegations that ER was part of "EPA's On Site Team" (along with EPA, DRMS and Weston Solutions) and that the "Team" allegedly performed (or failed to perform) a series of

actions at Gold King (Compl. ¶¶ 41–52) do not in any way establish that <u>ER itself</u> had the requisite control to be an operator. The federal regulations, ERRS contract and task order quoted above belie any claim that ER made the decisions that Plaintiff alleges contributed to the Release. Indeed, Plaintiff fails to allege ***<u>any</u>*** instance where ER actually directed work at Gold King. Nor does Plaintiff allege that ER performed any action that was not directed, approved and/or overseen by EPA. To the contrary, Plaintiff admits that an EPA OSC was on-site at Gold King at all relevant times (Compl. ¶ 41, 51), and further admits that EPA exercised its legal authority and "required" ER to perform "specified" work at Gold King (Compl. ¶¶ 34, 35). One cannot reasonably infer from Plaintiff's allegations that ER, as EPA's contractor, actually controlled the activities at Gold King. *See Ryland Group Inc.*, 492 F. Supp. 2d at 794 (dismissing a CERCLA claim against a sub-contractor because the general contractor "effectively directed and controlled all activities that took place" at the site and there were no allegations that the sub-contractor "exercised any discretion over the activities at the site"); *Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F. Supp. 1284, 1289 (N.D. Iowa 1994) (contractor that acted "at the direction of other parties" was not an operator).

Just like the contractors in *Ryland Group* and *Interstate Power*, Plaintiff alleges that EPA issued a task order to ER and "specified" work that ER was "required" to perform at Gold King, all of which is conclusive as to EPA's control over ER, not the inverse. (Compl. ¶¶ 34, 35.)

### B.  <u>ER Was Not an "Arranger."</u>

Plaintiff fails to allege facts showing that ER is liable as an arranger under CERCLA for three reasons. <u>First</u>, a party can only be liable as an arranger under CERCLA if the party took "'intentional steps to dispose of a hazardous substances.'" *Chevron Mining Inc. v. United States*,

863 F.3d 1261, 1279 (10th Cir. 2017) (quoting *Burlington N. & Santa Fe Ry Co. v. United States*, 556 U.S. 599, 611–12 (2009)). Plaintiff, however, does not allege any facts showing that the Release was anything other than an accident. *See Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir. 1993) (defendant was not an arranger because it did not hire the common carrier "to spill TCE" and arranger liability "excludes accidental spillage").

Second, in order to be held liable as an arranger under CERCLA, a party must arrange for the transport, disposal or treatment of hazardous substances "by any other party or entity." *Chevron Mining Inc.*, 863 F.3d at 1282 (the scope of arranger liability under 42 U.S.C. § 9607(a)(3) "most naturally reads as the arrangement 'for disposal or treatment . . . by any other party or entity'"). In other words, a party cannot "arrange" with itself to transport, dispose of or treat hazardous substances, and instead such actions "must be performed by another party or entity." *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 23–24 (1st Cir. 2004). *See also Chevron*, 863 F.3d at 1281 (adopting the First Circuit's "correct interpretation" of arranger liability). Plaintiff fails to allege facts showing that ER qualifies as an "arranger" under CERCLA because, contrary to the Tenth Circuit's decision in *Chevron*, Plaintiff fails to allege that ER entered into any contract, agreement or other arrangement with any other party to transport, dispose of or treat the hazardous substances that were released from Gold King. Plaintiff's claim that ER "subcontracted with Defendant Harrison Western for mining services" (Compl. ¶ 33) does not support Plaintiff's claim that ER is an arranger because Plaintiff admits that Harrison Western was not on-site at Gold King on the day of the Release. (Compl. ¶¶ 41, 80.) Thus, Plaintiff does not allege—and cannot allege—that hazardous substances were released by Harrison Western.

Third, Plaintiff does not allege any facts showing that ER controlled the process of transporting, disposing or treating the substances that were released from Gold King. *See United States v. Shell Oil Co.*, 294 F.3d 1045, 1055 (9th Cir. 2002) ("control is a crucial element of the determination of whether a party is an arranger under § 9607(a)(3)"). In *Interstate Power*, the court held that an excavation contractor was not liable as an arranger under CERCLA because the contractor "had no 'authority to control' the disposal of hazardous substances." 909 F. Supp. at 1287–88. Just like the contractor in *Interstate Power*, Plaintiff's allegations establish that ER "did not do anything that they were not ordered to do" or "given the go ahead to do" by EPA. 909 F. Supp. at 1288.

### C.  ER Was Not a "Transporter."

Plaintiff fails to allege any facts to support its claim that ER is liable as a "transporter" under CERCLA. (Compl. ¶ 65.) In the Tenth Circuit, transporter liability "is predicated on site selection by the transporter." *United States v. Hardage*, 985 F.2d 1427, 1435 (10th Cir. 1993) (defendant liable as a transporter because it selected the disposal site). "[A] transporter selects the disposal facility when it actively and substantially participates in the decision-making process which ultimately identifies a facility for disposal." *Tippins Inc. v. USX Corp.*, 37 F.3d 87, 90 (3d Cir. 1994). *Accord Interstate Power Co.*, 909 F. Supp. at 1289 (contractor that worked under other parties' supervision and "had no authority or opportunity to exercise any discretion" was not liable as a transporter). Plaintiff fails to allege any facts showing that ER participated (let alone "actively and substantially participated") in any decision-making process to select a disposal or treatment facility for the substances that were released from Gold King. Instead, the

only reasonable inference that can be drawn from Plaintiff's allegations and EPA's authority

under CERCLA and the ERRS contract is that EPA controlled any "site selection" decision.

Indeed, Plaintiff alleges the inverse of "transporter" liability since the AMD flowed out

of Gold King in an uncontrolled manner and § 9607(a)(4) only applies if a party "accepted

hazardous waste for transport" to a site that "the party selected." *Morrison Enters. v. McShares,*

*Inc.*, 302 F.3d 1127, 1132 (10th Cir. 2002). *See Coppola v. Smith*, 19 F. Supp. 3d 960, 972 (E.D.

Cal. 2014) (dismissing transporter claim where contaminants accidently seeped through a well).

## V.   CERCLA PREEMPTS PLAINTIFF'S CLAIMS FOR MONETARY DAMAGES.

The San Juan River and Lake Powell are natural resources under CERCLA (*see* 42

U.S.C. § 9601(16)), which provides a comprehensive scheme for recovering natural resource

damages and "preempts any state remedy designed to achieve something other than the

restoration, replacement, or acquisition of the equivalent of a contaminated natural resource."

*New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1247–48 (10th Cir. 2006) (holding that a state's

claim for "an unrestricted award of money damages" could not "withstand CERCLA's

comprehensive NRD scheme"). *See also* 42 U.S.C. §§ 9607(a)(4)(C) & 9607(f)(1). Like the

plaintiff's state law claims in *New Mexico*, Plaintiff's tort claims are based on the alleged

contamination of a natural resource. Contrary to the Tenth Circuit's express holding in *New*

*Mexico*, however, Plaintiff does not limit its request for damages to the costs of remediating the

San Juan River or Lake Powell. Thus, Plaintiff's state law Claims for Relief should be dismissed

or, in the alternative, Plaintiff's claims for unrestricted monetary damages should be stricken.

## VI.  ER IS NOT LIABLE UNDER ANY UTAH STATE STATUTE.

Plaintiff asserts claims under the Utah Water Quality Act ("UWQA") and the Utah Solid and Hazardous Waste Act ("USHWA"). (Compl. ¶¶ 108–120.) *See* Utah Code Ann. §§ 19-5-107(1)(a), 19-5-115(2), 19-6-102(10), 19-6-113(2). Plaintiff's UWQA and USHWA claims must be dismissed because neither Utah state statute is applicable to the alleged actions at Gold King.

It is well-established that a state's laws do not reach beyond its borders to conduct that occurred in another state. *Kansas v. Colorado*, 206 U.S. 46, 97 (1907) (a state "can impose its own legislation on no one of the others, and is bound to yield its own views to none"); *Lindsey v. McClure*, 136 F.2d 65, 70 (10th Cir. 1943) (states water laws "have no extraterritorial effect").

In cases such as this one that involve interstate discharges, the Supreme Court has made clear that the only state laws that apply are those of the state where the "point source" is located. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 487, 497–98 (1987) (releases from a New York mill that moved toward Vermont on Lake Champlain were actionable only under New York law); *Arkansas v. Oklahoma*, 503 U.S. 91, 100 (1992) ("[T]he only state law applicable to an interstate discharge is the law of the State in which the point source is located."). Different states having "independent and plenary regulatory authority over a single discharge would lead to chaotic confrontation between sovereign states." *Int'l Paper Co.*, 479 U.S. at 496–97.

*International Paper* forecloses Plaintiff's claims under UWQA and USHA. The laws of Utah do not apply to a discharge that originated in another state and traveled across state lines. The "point source" in this case is Gold King, which is located in Colorado. (Compl. ¶ 15.) Accordingly, the laws of the State of Colorado govern all of Plaintiff's state law claims, and the Utah statutes relied on by Plaintiff are inapplicable.

## VII. CERCLA STRIPS THE COURT OF JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

A federal court lacks jurisdiction "to review any challenges to removal or remedial action selected under section 9604 of this title." 42 U.S.C. § 9613(h). "'This clear and unequivocal provision is a blunt withdrawal of federal jurisdiction over challenges to ongoing CERCLA removal actions . . . .'" *Cannon v. Gates*, 538 F.3d 1328, 1333 (10th Cir. 2008) (citation omitted). The jurisdictional bar of § 9613(h) is triggered when two criteria are met: (i) "the United States has 'selected' a 'removal or remedial action' under 42 U.S.C. § 9604; and, if so," (ii) "the [plaintiffs'] claims present a 'challenge' to that removal or remedial action." *Id.* at 1332–33. Plaintiff's state law claims satisfy both prongs.[1]

### A. EPA Has "Selected" a Removal Action for Purposes of § 9613(h).

The Tenth Circuit has held that § 9613(h) applies to a lawsuit that (like Plaintiff's lawsuit here) seeks to compel a clean-up of a site that was allegedly contaminated as a result of Government activities, but which site the U.S. was studying for contamination. In *Cannon*, plaintiffs sought to compel the U.S. to clean up a site that was contaminated as a result of Army weapons testing. The U.S. "initiated efforts to study the contamination" in the 1970s, but "did not clean up" the site by the time the case reached the Tenth Circuit more than 30 years later in 2008. *Cannon*, 538 F.3d at 1330. Based on the Government's efforts "to 'monitor, assess, and evaluate' the hazardous substances on the Cannons' land," the Tenth Circuit concluded "that the Government has selected a removal action and thus triggered § 9613(h)." *Id.* at 1334.

---

[1] This includes Plaintiff's claims under UWQA and USHWA. *See Anacostia Riverkeeper v. Washington Gas Light Co.*, 892 F. Supp. 2d 161, 171 (D.D.C. 2012) (Section 9613(h) applied despite savings clauses because CERCLA "makes the primacy of CERCLA § 113(h) explicit").

The Tenth Circuit's decision in *Cannon* controls here and compels dismissal of Plaintiff's state law claims. Just like in *Cannon*, the EPA "has already undertaken several steps toward determining how it will address" areas that were potentially affected by the Release. *Cannon*, 538 F.3d at 1334. EPA has placed Gold King (and other abandoned mining sites in the Animas River watershed) on the National Priorities List ("NPL"), and the geographic scope of the Superfund Site includes "any other location where that contamination has come to be located." *See* 81 Fed. Reg. 62397, 62399 (Sept. 9, 2016). Accordingly, the areas in Utah that Plaintiff alleges were contaminated by the Release are encompassed within the Superfund Site listing for Gold King, and the jurisdictional bar of § 9613(h) has been triggered. *See Washington State Dep't of Transp. v. EPA*, 917 F.2d 1309, 1311 (D.C. Cir. 1990) ("EPA may alter or expand the boundaries of a NPL site if subsequent study reveals a wider-than-expected scope of contamination."); *Cannon*, 538 F.3d at 1334 (Section "9613(h)'s jurisdiction strip applies, even if the Government has only begun to 'monitor, assess, and evaluate the release or threat of release of hazardous substances.'") (quoting 42 U.S.C. § 9601(23)).

**B.   Plaintiff's State Law Claims Challenge EPA's Ongoing Removal Actions.**

The Tenth Circuit has repeatedly explained that in enacting the jurisdictional bar of § 9613(h), "'Congress intended to prevent time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites.'" *Cannon*, 538 F.3d at 1332 (quoting *United States v. City & County of Denver*, 100 F.3d 1509, 1514 (10th Cir. 1996)). Under Tenth Circuit precedent, any challenge to the remediation of areas affected by the Release "must wait because CERCLA 'protects the execution of a CERCLA plan during its

pendency from lawsuits that might interfere with the expeditious cleanup effort.'" *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1249 (10th Cir. 2006) (citation omitted).

Just like in *Cannon*, Plaintiff has "requested injunctive relief ordering the remediation of their property." *Cannon*, 538 F.3d at 1335. (Compl. ¶¶ 96, 106, 113, 119, 126.) This Court lacks jurisdiction to hear Plaintiff's claims because "[s]uch relief would undoubtedly interfere with the Government's ongoing removal efforts." *Id.* at 1335. Ordering injunctive relief before the EPA has completed its response actions would compel ER to take actions with respect to the Release that EPA may or may not order under its broad authority under CERCLA, which is precisely what Congress intended to avoid by enacting § 9613(h). *See Cannon*, 538 F.3d at 1332.

## C.  Section 9613(h) Also Applies to Plaintiff's Claims for Monetary Damages.

In *New Mexico*, the State of New Mexico, like Plaintiff here, sought unrestricted monetary damages under state tort law based on the contamination of a natural resource. After holding that New Mexico's state law damage claims were preempted by CERCLA, 467 F.3d at 1247, the Tenth Circuit dismissed New Mexico's claim for replacement costs under § 9613(h), *id.* at 1249–50. Rejecting New Mexico's argument that its claim for monetary damages did not "alter or expand the EPA's response plan" as "fall[ing] on deaf ears," the Tenth Circuit explained that "[a]ny relief provided the State would substitute a federal court's judgment for the authorized judgment of both the EPA and NMED." *Id.* at 1249–50.

Just like the State of New Mexico's claims for monetary damages in *New Mexico*, Plaintiff's state law claims for unrestricted monetary damages are preempted by CERCLA and any "residual damages" that Plaintiff might have sustained must await adjudication after "the conclusion of the EPA-ordered remediation." *Id.* at 1247, 1250.

16

## VIII. THE GOVERNMENT CONTRACTOR DEFENSE SHIELDS ER FROM LIABILITY FOR PLAINTIFF'S STATE LAW CLAIMS.

Plaintiff alleges that ER was an EPA contractor that assisted EPA with its efforts "to investigate the possibility of opening the collapsed mine portal" at Gold King. (Compl. ¶ 32.) Under the facts alleged here and in similar cases, federal government contractors cannot be held liable under state tort law for damages caused by their performance of a government contract. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988) (military contractor not liable under state tort law for a defectively designed emergency escape system for a helicopter); *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940) (government contractor not liable for producing "artificial erosion" along a river because the work was "authorized and directed by the governmental officers"); *Richland-Lexington Airport Dist. v. Atlas Props., Inc.*, 854 F. Supp. 400, 423–24 (D.S.C. 1994) (granting summary judgment in favor of a contractor hired by EPA to assist with clean-up activities, including excavation, based on the Government Contractor Defense). Thus, Plaintiff's state law claims should be dismissed.

### A.   The Government Contractor Defense Applies to ER's Alleged Conduct.

In order to trigger the Government Contractor Defense, the underlying acts must fall within the scope of immunized conduct. The underlying acts must: (1) involve "uniquely federal interests," (2) present a "significant conflict" between federal interests and the operation of state law, and (3) involve "a discretionary function" by the Government agency or agent directing the contractor's work under the FTCA, 28 U.S.C. § 2680(a). *Boyle*, 487 U.S. at 504, 507, 511.

17

### 1.  **ER's Alleged Conduct Involved "Uniquely Federal Interests."**

This case involves uniquely federal interests because Plaintiff alleges that ER was a federal contractor for EPA "at all relevant times" and ER's alleged conduct arises from its performance of its ERRS contract with EPA during an EPA removal action. (Compl. ¶¶ 8, 32.) *Boyle*, 487 U.S. at 505 n.1 ("[T]he liability of independent contractors performing work for the Federal Government, like the liability of federal officials, is an area of uniquely federal interest."). EPA has a unique interest in conducting CERCLA response actions and seeing that its federal contracts, such as the ERRS contract, are fulfilled. *See Boyle*, 487 U.S. at 505–06.

### 2.  **There Is a "Significant Conflict" Between Federal Interests and State Law.**

There is a significant conflict between federal interests and state law because requiring EPA contractors to comply with state law while working on a federal project like Gold King "would frustrate specific objectives of federal legislation," which grants EPA broad discretion to manage such projects. *Boyle*, 487 U.S. at 507. If Plaintiff's claims were sufficient to state a claim against ER under state law, then a federal government contractor working on a federal project under the direction of a federal agency acting within the scope of its authority under federal law would have a legal obligation to ***disobey*** the federal government's directions if those directions conflict with state law duties. The Supreme Court created the Government Contractor Defense to avoid these kinds of conflicts and to allow the Government and its contractors to focus on "getting the Government's work done." *Boyle*, 487 U.S. at 505. Requiring ER to disregard some or all of EPA's directions based on a state-imposed duty of care would necessarily interfere with EPA's authority to decide how "it will protect individuals and their property from exposure to hazardous wastes." *Cisco v. United States*, 768 F.2d 788, 789 (7th Cir. 1985).

### 3.   **The Alleged Acts Fall Within the FTCA's Discretionary Function Exception.**

A two-part test applies to determine whether a course of action is entitled to "discretionary function" immunity under the FTCA. First, a court must "consider whether the action is a matter of choice for the acting employee," in this case, the EPA OSCs.  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, "a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield," *i.e.*, "'decisions grounded in social, economic, and political policy.'"  *Id.* at 536–37 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). Significantly, "it is irrelevant whether the government employee actually balanced" these considerations. *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988). The relevant question is only "whether the decision is susceptible to policy analysis." *Id.* at 121. The Tenth Circuit has held that the discretionary function exception barred a similar action based on the Army's allegedly "deficient planning and execution" of an environmental clean-up of the Rocky Mountain Arsenal. *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1542 (10th Cir. 1992).

Just like the plaintiffs' claims in *Daigle*, all of Plaintiff's state law claims in this case arise from decisions that were controlled by EPA pursuant to its broad authority under CERCLA and the ERRS contract. Plaintiff admits that EPA (i) was undertaking a removal action at Gold King, (ii) was on site at Gold King at all relevant times, and (iii) issued a task order that "specified" work that ER was "required" to perform. (Compl. ¶¶ 32, 34, 35, 41, 51.) The only reasonable inference that can be drawn from these admissions is that EPA—not ER—controlled the relevant decisions as to when and how to proceed with work at Gold King.

Plaintiff relies on a series of alleged decisions that were made that contributed to the Release, namely proceeding with "work" at Gold King on August 4 and 5, 2015 without: (i) "accurately" testing and measuring the water level, volume or pressure behind the blockage (Compl. ¶45–47, 52); (ii) "installing a secondary containment system" (Compl. ¶¶ 48, 77); (iii) "developing and implementing emergency response procedures" (Compl. ¶¶ 49); (iv) developing a health and safety plan that complied with OSHA and EPA regulations (Compl. ¶¶ 50, 77); and (v) waiting for "the arrival of the subcontractor" Harrison Western (Compl. ¶ 80). As set forth below, all of these alleged decisions were a matter of choice for EPA and grounded in policy and, therefore, afford ER the protection of the Government Contractor Defense.

### a.   The alleged acts were "a matter of choice" for EPA and its OSCs.

It is undeniable that EPA had broad authority to direct the activities at Gold King. *See Key Tronic*, 511 U.S. at 814. Like other statutes that the Tenth Circuit has held grant the U.S. Government discretion, CERCLA incorporates a "broad statutory directive" and there is no "statute, regulation, or policy [that] specifically prescribes a course of action" for EPA to follow when conducting removal actions at an inactive mine. *See Johnson v. U.S. Dep't of Interior*, 949 F.2d 332, 337–38 (10th Cir. 1991) (Park Service not liable for rescue efforts because no statute, regulation or policy "prescribe[d] a specific course of conduct"); *Daigle*, 972 F.2d at 1541 (Army's environmental clean-up actions "involved policy choices of the most basic kind").

The Third Circuit's decision in *U.S. Fidelity & Guaranty*, 837 F.2d 116, is illustrative. Contrary to an expert report that recommended only performing hazardous operations when the wind was blowing <u>away</u> from a nearby city, the EPA's OSC directed operations when the wind was blowing <u>toward</u> the city. During the course of the operations, an acid cloud was released and

migrated to the city. The Third Circuit held that the discretionary function exception barred

recovery against EPA. Despite the EPA OSC's alleged negligence, the Third Circuit found that

the OSC, like the EPA OSCs at Gold King, "was dispatched with authority to determine how to

schedule the cleanup operations at the Drake site in a manner that would most safely and

effectively minimize the risk of serious injury to the public." *Id.* at 122. Just like the OSC in *U.S.*

*Fidelity & Guaranty*, the authority delegated to the EPA OSCs at Gold King "left room for, and

indeed required, the exercise of policy judgment based upon the resources available and the

relative risks to the public health and safety from alternative actions."  *Id.* EPA was not bound by

any statute, regulation or policy prescribing "a specific course of conduct" at Gold King and,

therefore, had discretion to choose among several alternatives. *See Johnson*, 949 F.2d at 337–38.

Because the EPA OSCs had to perform their duties "without reliance upon a fixed or

readily ascertainable standard," their decisions were discretionary and protected from later

liability. *See Miller v. U.S. Dep't of Transp.*, 710 F.2d 656, 663 (10th Cir. 1983). *See also Garcia*

*v. U.S. Air Force*, 533 F.3d 1170, 1177 (10th Cir. 2008) (Air Force guide and instructions did

"not prescribe a mandatory course of conduct that the government was required to follow");

*Elder v. United States*, 312 F.3d 1172, 1177–78 (10th Cir. 2002) (mandatory safety guidelines

did "not dictate what actions" Park Service employees must take in particular situations).

Moreover, Plaintiff's allegations that the EPA On Site Team did not comply with "EPA

and OSHA regulations" (Compl. ¶¶ 50, 77) do not defeat discretionary function immunity. The

Tenth Circuit rejected an identical claim in *Daigle*, 972 F.2d 1527. In that case, residents sued

the government based on the Army's clean-up effort at the Rocky Mountain Arsenal, alleging

"that the Army violated CERCLA's health and safety provisions by 'gassing the neighborhood.'"

*Id.* at 1540. The Tenth Circuit rejected the residents' argument because "the health and safety provisions cited by the Plaintiffs are not such specific and mandatory directives." *Id.* Thus, the Tenth Circuit dismissed the residents' claims based on the discretionary function exception. *Id.* at 1542. Just like in *Daigle*, the discretionary function exception applies in this case. Based on Plaintiff's allegations, EPA had the authority to control all of the alleged activities at Gold King and nothing divested EPA of its discretion to decide how to act. (*See* Compl. ¶¶ 32, 34, 35.) EPA was not bound by the regulations that Plaintiff cites in its Complaint any more than the Army was bound by CERCLA's health and safety provisions in *Daigle*. *See also U.S. Fid. & Guar. Co.*, 837 F.2d at 123 (EPA OSC's decision to conduct operations involving airborne pollutants when the wind was blowing toward a city a protected discretionary function because the OSC was not required "to undertake removal actions only on days with favorable wind conditions").

  **b. <u>The alleged acts were grounded in policy.</u>**

In *Daigle*, the Tenth Circuit ruled that "[w]hen government agents are authorized to exercise discretion in carrying out established government policy, such as the policies underlying CERCLA response actions, the exercise of that discretion is presumed to be grounded in policy." *Daigle*, 972 F.2d at 1541–42 (Army immune under FTCA for clean-up work that resulted in "gassing" a neighborhood because the Army had to choose how to go about "containing the spread of contamination before further damage could occur while still protecting public health").

The alleged decisions that Plaintiff challenges in this case involved the same considerations that the Tenth Circuit has found to be discretionary "policy" judgments: safety, human resources, economic resources, and governmental interference. *See Johnson*, 949 F.2d at 339. Given the decisions alleged by Plaintiff (*see* Compl. ¶¶ 45–52), EPA had to weigh

numerous policy considerations when deciding what to do at Gold King, including: the environmental impacts of any reclamation activity; the safety of on-site personnel and surrounding areas; the impacts of any activity on the conditions of other inactive mines in the area; the potential for delaying a project that was already postponed a year earlier and had to be completed in a mountainous region with a short work season; the scheduling of other EPA clean-up projects (particularly in terms of allocating personnel, equipment and other resources); the utility and practicality of different courses of action, including further or other testing; the availability of equipment and other resources; and costs. *See U.S. Fid. & Guar. Co.*, 837 F.2d at 122 (EPA OSC had to balance "the risks of proceeding with the neutralization on the day chosen against the risks of further delay"). Thus, all of the alleged decisions at Gold King were "susceptible to policy analysis," *even if* the OSCs did not consider "each of the identified policy factors." *Johnson*, 949 F.2d at 339; *U.S. Fid. & Guar. Co.*, 837 F.2d at 121. *See also Varig Airlines*, 467 U.S. at 820 (FAA employees "spot-checking" aircraft during compliance reviews was a discretionary function because employees made policy judgments involving "confidence" in a manufacturer, "the need to maximize compliance" with regulations, and allocation of resources); *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1222–23 (10th Cir. 2016) (despite mandatory checklist, Forest Service's wildfire response was "susceptible to a policy analysis" because it involved balancing "the needs to protect private property, ensure firefighter safety, reduce fuel levels, and encourage natural ecological development").

### B.  ER Is Entitled to Protection as a Government Contractor.

After determining that the underlying conduct falls within the scope of the Government Contractor Defense, a contractor is entitled to derivative sovereign immunity if (1) the

government "approved reasonably precise specifications"; (2) the contractor's performance "conformed to those specifications"; and (3) the contractor warned the government about any dangers "that were known to the [contractor] but not to the United States." *Boyle*, 487 U.S. at 512; *Richland-Lexington Airport Dist.*, 854 F. Supp. at 423–24.

As to the first two elements, the ERRS contract and task order (Compl. ¶¶ 34, 35) establish that ER was required to work "under the direction" of the EPA OSC (Ex. A at ¶ I.E), that work plans were "to be submitted to the OSC for approval," and that work would proceed "[a]s determined appropriate by the OSC" (Ex. B at 1–3). Plaintiff also admits that the EPA OSCs were on-site at Gold King at all relevant times. (Compl. ¶¶ 41, 51.) Plaintiff's allegations belie any claim that ER deviated from EPA's direction. As to the third element, Plaintiff alleges that EPA identified numerous "risks" in its task order, including that "[c]onditions may exist that could result in a blow-out." (Compl. ¶ 34.) Accordingly, Plaintiff <u>admits</u> that all of the alleged risks relating to the water that was impounded inside Gold King were known by EPA.

In *Richland-Lexington*, an EPA contractor was entitled to the Government Contractor Defense because, as here, "the EPA made the decisions with respect to cleaning up the site," and the contractor "performed the clean-up according to the specifications issued by the EPA." *Richland-Lexington*, 854 F. Supp. at 423–24. As set forth above, Plaintiff alleges the same facts in this case, thus ER cannot be held liable under state law. *See Yearsley*, 309 U.S. at 19–21 (contractor was not liable for work that "washed away" plaintiffs' land because the "work was done pursuant to a contract with the United States Government, and under the direction of the Secretary of War and the supervision of the Chief of Engineers of the United States").

## IX.  PLAINTIFF'S JOINT AND SEVERAL LIABILITY AND PUNITIVE DAMAGE CLAIMS SHOULD BE STRICKEN.

Colorado has abolished joint and several liability by statute in favor of pro-rata liability. Colo. Rev. Stat. § 13-21-111.5(1). Accordingly, Plaintiff's claims that ER is "jointly and severally" liable for damages under state tort law should be stricken as immaterial under Fed. R. Civ. P. 12(f) because such claims have no bearing on this case. *See Nitzsche v. Stein, Inc.*, 797 F. Supp. 595, 601–02 (N.D. Ohio 1992) (striking improper prayer for joint and several liability).

Plaintiff's punitive damage claims should also be stricken because Colorado prohibits punitive damage claims in initial pleadings under Colo. Rev. Stat. § 13-21-102(1.5)(a), which is a substantive law that applies in federal court. *See, e.g.*, *Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007).

## X.  CONCLUSION

The Court should grant ER's Motion to Dismiss and Motion to Strike. Since any potential amendments would be based on facts Plaintiff either knew or, in light of the scores of reports and investigations about the Release, should have known about "but fail[ed] to include them in the original complaint," the Complaint should be dismissed without leave to amend. *See Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990). Further, ER respectfully requests oral argument. ER's Motions raise a range of important issues regarding the scope of federal government contractor liability under CERCLA and state law, and ER respectfully submits that the Court's decision-making process would be aided by oral argument.

DATED:  December 18, 2017

GLASER WEIL FINK HOWARD
 AVCHEN & SHAPIRO LLP

By: /s/ Terry D. Avchen

| | |
|---|---|
| Terry D. Avchen (*pro hac vice*) | John A. Adams (Bar No. 0023) |
| Peter C. Sheridan (*pro hac vice*) | E. Blaine Rawson (Bar No. 7289) |
| Andriy R. Pazuniak (*pro hac vice*) | RAY QUINNEY & NEBEKER |
| 10250 Constellation Blvd., 19th Fl. | 36 South State Street |
| Los Angeles, California 90067 | Suite 1400 |
| Telephone: (310) 553-3000 | Salt Lake City, UT 84111 |
| Email: tavchen@glaserweil.com | Telephone: (801) 532-1500 |
| Email: psheridan@glaserweil.com | Email: jadams@rqn.com |
| Email: apazuniak@glaserweil.com | Email: brawson@rqn.com |

*Attorneys for Defendant Environmental Restoration, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ Andriy R. Pazuniak