IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,                          No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*    No. 18-cv-319-WJ

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART STATE OF UTAH'S MOTION FOR SANCTIONS
DUE TO DEFENDANT HARRISON WESTERN CONSTRUCTION CORPORATION'S
SPOLIATION OF EVIDENCE**

Defendant Environmental Protection Agency ("EPA") hired Defendant Environmental Restoration ("ER") and Defendant Weston Solutions ("Weston") as contractors to assist with the work at the Gold King Mine. *See* Plaintiff State of Utah's Motion for Sanctions due to Defendant Harrison Western Construction Corporation's Spoliation of Evidence at 5, Doc. 1488, filed March 7, 2022 ("Motion"). ER retained Defendant Harrison Western Construction Corporation ("Harrison") "in August 2014 to assist in the reopening of the Gold King Mine." Response at 1, Doc. 1529, filed April 4, 2022.

Harrison states it was involved with the planning of the work at the Gold King Mine, but that Harrison was not present during, and Harrison's work plan was not applicable or relevant to, the work by others that resulted in the release from the Gold King Mine on August 5, 2015:

> Harrison Western mobilized at the mine [in September 2014] at which time it observed others excavating near the mine's adit.[1] Harrison Western noticed seepage in the face of the excavation in a quantity that it believed could not be safely handled under the existing circumstances. Harrison Western recommended that the excavation cease, and it did. With the mine's reopening suspended, Harrison Western returned to suburban Denver and prepared a revised construction plan to safely reopen the Gold King Mine.

---

[1] "An 'adit' is a horizontal passage into a mine." *Allen* Plaintiffs' Second Amended Complaint at 103, ¶ 322, Doc. 445, filed January 21, 2020.

> That revised plan was provided to ER and EPA in or around February-March 2015, and Harrison Western planned to return to the Gold King Mine during the week of August 14, 2015, at which time it expected to direct and supervise the implementation of its revised plan. Before Harrison Western was expected to return to the Gold King Mine, the "EPA's On-Site Team" -- not Harrison Western -- "triggered an uncontrolled blowout at the Gold King Mine, located about five miles north of Silverton, Colorado."
>
> At no time was Harrison Western ever notified that others had already undertaken excavation, and intended to continue excavating, near the mine entrance without Harrison Western employee Robert Heeter's direction or supervision. The excavation that was performed at the mine on August 4-5, 2015, was done without the knowledge, direction or supervision of anyone at Harrison Western.

Response at 1-2 (citations omitted). EPA OSC [On-Scene Coordinator] Griswold testified that Harrison's work plan was not applicable or relevant to the work OSC Griswold was doing at the Gold King Mine on August 4-5, 2015. *See* Response at 3.

> Utah contends that:
>
> Harrison had independent authority and control to perform its duties and take necessary actions to work in a safe and proper manner, to avoid a blowout and resulting damages to the environment, human health and safety. (FAC at ¶ 36) ... Harrison's intentional and/or reckless or negligent actions contributed to a breach in the adit, which resulted in the August 5, 2015, Blowout. (FAC at ¶ 59.

Motion at 6-8 (citing Utah's First Amended Complaint).

**Spoliation of Electronically Stored Information ("ESI")**

Utah states that it received Harrison's responses to Utah's first set of requests for production of documents on October 14, 2019, and Harrison's responses stated that all documents, if any, had been previously produced and directed Utah to Harrison's initial and first supplemental disclosures. *See* Motion at 9. Utah contends that Harrison's statement that it had previously produced all documents is "untrue." Motion at 9.

Utah sought documents related to the work Harrison performed or planned to perform at the Gold King Mine in 2014 and 2015, but the only pre-blowout emails Harrison produced were

2

those that pertained to its being awarded the subcontract work at the mine and related funding issues and the only post-blowout documents were emails and an employee's journal, and no other types of documents, i.e., memoranda, reports, and non-email correspondences:

> The documents Harrison had produced did not pertain to many of Utah's requests, which sought documents related to: (1) having been on-site at the Gold King Mine in September 2014 and having performed excavation work there, (2) having drafted a plan for opening up the Gold King Mine portal in November 2014, (3) having discussed these plans with ER, EPA, and others in February 2015 at Harrison Western's offices, (4) having revised the work plan in March 2015, (5) having submitted a work schedule in June 2015, and (6) having had numerous communications with EPA and Environmental Restoration during the period from 2014 to August 5, 2015 about the work at the Level 7 adit.

Motion at 9-10.

After counsel for Utah conferred with counsel for Harrison regarding the unproduced documents, counsel for Harrison stated, on November 19, 2019, that:

> he learned that Harrison "does not have any emails from the time periods reflected in the emails produced by [ER]." (*Id.*) He further stated that Harrison's current server had been searched twice, and its prior service had been searched as well. (*Id.*) He stated that Harrison's third-party IT consultant suspects that a 'catastrophic event' occurred at some time prior to the migration of information and data from the prior server to the new server resulting in information and data that is corrupted and inaccessible. (*Id.*) Hence, counsel stated that Harrison did not have any other emails to produce. (*Id.*)

Motion at 11. On November 22, 2019, Harrison provided a supplemental response to Utah's first set of requests for production of documents:

> After the production of its responses as well as the documents requested by Utah, Harrison Western engaged a third-party information technology consultant to review its company servers to determine why certain emails sent to or from Harrison Western employees and produced by other parties in the underlying action were not found within Harrison Western's own records. After two searches of its current server and a search of the server it replaced, Harrison Western was advised that neither contained any emails for certain time periods. According to its consultant, that absence of emails indicates a catastrophic event occurred at some point prior to the migration of information and data from the prior server to the current server resulting in information and data that is corrupted and inaccessible.

3

> In short, Harrison Western confirms that it does not have any other emails to produce in response to Utah's first set of requests for production of documents.

Motion at 11.

**Rule 37**

> Rule 37 provides in relevant part:
>
> **(b) Failure to Comply with a Court Order.**
>
> ....
>
> **(2)** *Sanctions Sought in the District Where the Action Is Pending.*
>
> **(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
>> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>
>> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> ...
>
> **(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b);

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

4

>   **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>>   **(A)** presume that the lost information was unfavorable to the party;
>>
>>   **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>>   **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

**Harrison's Preservation of ESI**

>   Harrison states its "documents and emails have always been stored on a server:"
>
>   Harrison Western took reasonable steps to preserve ESI. It originally stored ESI on its office server. It then migrated its ESI to a Microsoft Office 365 server. This is no different than countless litigants involved in lawsuits throughout the country. Utah suggests Harrison Western did not implement a litigation hold. *See* Motion at 11. This is not true. Immediately upon being made aware of imminent litigation in September 2016, Harrison Western implemented a litigation hold on documents related to the Gold King Mine project. The catastrophic event which resulted in the loss of ESI was not something Harrison Western could have controlled or anticipated. It is not a failure of Harrison Western to comply with its litigation hold. Rather, it was something entirely out of Harrison Western's control. *See* Exhibit C at ¶¶ 4-5.

Response at 4-5, 9 (citing affidavit of the technology contractor who assisted Harrison with transferring its email documentation form its in-office server to a Microsoft Office 365 server and stated that the loss of emails is consistent with the occurrence of a catastrophic event).

>   Utah states:
>
>   [There] is no reasonable explanation for Harrison's spoliation of evidence from its "catastrophic event" ... Harrison must reasonably have had a back-up storage system and used qualified experts to ensure that data would not have been erased during a server migration. Harrison does not state that 100% of its data was destroyed or lost for all of its businesses, only for the Gold King Mine Blowout. That is simply implausible.

Motion at 19. Utah also states:

> Harrison submits no evidence showing that it [implemented] a proper litigation hold.  The Opposition also has no explanation of the "catastrophic even" other than its conjecture, that it should have happened "sometime" before the migration of servers.  Harrison does not disclose whether it had a back-up storage system, or whether it used qualified staff or experts to ensure that data would not have been erased before, during, or after a server migration.

Reply at 8.

Harrison states: "Utah suggests Harrison Western engaged in bad faith purely based on speculation and conjecture."  Response at 15.

> Roughly one year later [after Harrison notified Utah at catastrophic event occurred and that Harrison does not have any other emails to produce], on October 5, 2020, Harrison Western's Rule 30(b)(6)[2] representative was deposed.  No attorney for the State of Utah appeared at or attended the deposition.  On October 30, 2020, Robert Heeter – the Harrison Western employee with the most information on the Gold King Mine project – was deposed.  Once again, no attorney for the State of Utah appeared at or attended the deposition.
> ....
>
> Despite the opportunity to do so, Utah declined to attend or question Harrison Western's Rule 30(b)(6) representative about the loss of emails on Harrison Western's server, even though the deposition took place 11 months after Utah became aware of the lost emails.

Response at 6, 15.

**Violation of Preservation Order**

Utah asserts that "Harrison violated the Court's Preservation Order by failing to take reasonable steps to preserve [the evidence].  A preservation Order was stipulated to by all parties and entered in December 2018.  Harrison violated this Order as well by failing to take reasonable steps to preserve its documents."  Motion at 20.

Utah's Motion refers to two Preservation Orders.  The first appears to refer to the undersigned's Initial Case Management Order which states: "Until the parties reach an agreement

---

[2] Fed. R. Civ. P. 30(b)(6) provides that a party may name a corporation as a deponent and that the named organization must designate one or more persons to testify on its behalf.

on a preservation plan or the Court orders otherwise, each party shall continue to take reasonable steps to preserve all documents, data and tangible things containing information potentially relevant to the subject matter of this litigation." Doc. 34 at 5, filed June 25, 2018. The second refers to Special Master Hon. Alan C. Torgerson's Stipulated Order Relating to the Preservation of Potentially Relevant Information which states: "The Parties will take reasonable steps to preserve Potentially Relevant Information that is in their possession, custody or control on the date of this Order, or that comes into their possession, custody or control after the date of this Order." Doc. 144 at 1, filed December 6, 2018.

Harrison argues that no sanctions are warranted under Rule 37(b)(2), which provides that sanctions may be issued for the failure "to follow specific instructions from the court," because Special Master Torgerson's "Preservation Order does not provide any specific instructions from the Court but rather merely mirrors the duties of Rule 37(e) by requiring 'reasonable steps' to 'preserve one copy of each non-identical document.'" Response at 16. Harrison also states it did not violate the preservation order because "the preservation order was issued [by Special Master Torgerson] on December 6, 2018" and the loss of data on its server occurred before October 2018. Response at 16-17. Harrison does not address the undersigned's Initial Case Management Order which was filed June 25, 2018, and ordered each Party to take reasonable steps to preserve all relevant evidence.

**Prejudice**

Utah contends the spoliated documents are critical to the issues of this case:

These documents could inform Utah of its claims against Harrison, impeach Harrison's witnesses and other statements, provide critical materials for expert witness testimony, and go to the heart of proving Harrison acted unreasonably in causing or contributing to the Blowout. For example, the parties dispute whether:

7

- Harrison's advice and plan were accepted or ignored by EPA and ER, and the timing of those communications;

- Whether Harrison's plan was properly presented and supported, which version of the plan was provided to EPA and ER, and the timing of those submissions and communications;

- Whether Harrison was invited to an on-site meeting scheduled for August 4, 2015, and whether it declined or had other reasons or excuses for its failure to be present;

- Whether Harrison knew ER was planning to conduct excavation activities on August 4 and 5, 2015,

- Whether miscommunications regarding the nature and objectives of work on August 5, 2015 created confusion regarding how to safely and properly accomplish work at the Gold King Mine.

Motion at 17-18. Utah argues that it is prejudiced by Harrison's spoliation of "key evidence including emails, call logs, reports, memoranda, and non-email correspondences, [because] Harrison has deprived Utah evidence showing Harrison's actions caused or contributed to a breach in the adit, which resulted in the August 5, 2015 Blowout." Motion at 18-19.

Harrison argues that "there has been no prejudice ... because nearly all documentation sought by Utah has been produced by one of the other parties to the suit and witnesses deposed in the case (EPA, ER, and Harrison Western personnel) testified about the subjects on which Utah claims the missing emails pertain." Response at 9, 11-12 (discussing how the ESI relevant to the issues identified by Utah either has been or could have been discovered through other means).

**Requested Sanctions**

Utah seeks the following sanctions:

- Pursuant to Rule 37(e)(1) and (b)(2)(A), an order that permits Utah to introduce evidence of Harrison's spoliation at trial;

- Under Rule 37(e)(1) and (b)(2)(C), an order awarding Utah all reasonable attorneys' fees and costs associated with investigating Harrison's spoliation and preparing this Motion;

8

> • Under Rule 37(e)(1) and (b)(2)(A)(ii), an order precluding Harrison from proffering other evidence that it was not invited to attend, or informed of the plans and actions to take place on the day of the Gold King Mine Blowout, including the issues at pages 13-14;
>
> • Under Rule 37(e)(2) and (b)(2)(A)(i), an adverse inference instruction or presumption that the spoliated evidence would have been unfavorable to Harrison with respect to its participation, planning, recommendations and communications with EPA and its other employees and contractors, and its invitation to attend and notice of the plans and actions to take place on the day of the Gold King Mine Blowout, including the issues at pp. 13-14;
>
> • Any and all other relief that the Court deems appropriate.

Motion at 21.  The "issues at pp. 13-14" are quoted in the preceding section of this Order.

**Discussion**

The Court finds that some spoliation sanctions are proper.

> Spoliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence. But if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." Without a showing of bad faith, a district court may only impose lesser sanctions.

*Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citations omitted).  "Sanctions for spoliation serve three distinct remedial purposes: punishment, accuracy, and compensation."  *Browder v. City of Albuquerque*, 187 F.Supp.3d 1288, 1295 (D.N.M. 2016) (Brack, J.).

> Counsel for the parties have a continuing responsibility to ensure that the parties preserve relevant information. This responsibility obligates counsel to do more than simply notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must go beyond mere notification and take affirmative steps to monitor compliance, to talk to key employees in an effort to understand how evidence will be stored, to continually ensure that the party is preserving relevant evidence. At the end of the day, however, the duty to preserve and produce documents rests on the party.

9

*Browder v. City of Albuquerque*, 187 F.Supp.3d 1288, 1295 (D.N.M. 2016) (citations and quotation marks omitted).

There is no dispute that Harrison knew, or should have known, that litigation was imminent. Harrison states: "Immediately upon being made aware of imminent litigation in September 2016, Harrison Western implemented a litigation hold on documents related to the Gold King Mine project." Response at 9.

Harrison failed to take reasonable steps to preserve its ESI. Other than implementing a litigation hold, Harrison does not identify any other steps it took to preserve its ESI such as taking affirmative steps to monitor compliance, talking to key employees in an effort to understand how evidence will be stored, and continually ensuring that Harrison was preserving relevant evidence, for example by having a back-up storage system in place to ensure that the relevant ESI would be preserved.

The Court further finds that Utah has been prejudiced by the spoliation of Harrison's ESI. *See U.S. ex rel. Baker v. Community Health Systems, Inc.*, 2012 WL 12294413 *14 (D.N.M. 2012) ("prejudice is shown when the destroyed evidence goes to a critical issue and the evidence at hand is conflicting"). The spoliated ESI is relevant to issues such as whether: (i) Harrison declined or had other reasons for not being present at the on-site meeting scheduled for August 4, 2015; (ii) Harrison knew ER was planning to conduct excavation activities on August 4-5, 2015; and (iii) miscommunications created confusion regarding how to safely and properly accomplish work at the Gold King Mine.

The Court agrees with Utah that the "destroyed documents could either corroborate or impeach Harrison's witnesses ... [and] the testimony of its witnesses is not enough to replace the destroyed documents" because "it is unlikely they will be able to remember the specific contents

of each destroyed work order." Motion at 18. The Court is, however, not persuaded by Utah's assertion that "*none* of these documents can be replaced." Motion at 16 (emphasis added). Utah has not shown that some of the documents at issue cannot be obtained from EPA and/or ER, such as those relating to: (i) the plan accepted or ignored by EPA and ER; (ii) which version of the plan was provided to EPA and ER; (iii) whether EPA or ER invited Harrison to an on-site meeting scheduled for August 4, 2015; (iv) whether EPA or ER notified Harrison that ER was planning to conduct excavation activities on August 4 and 5, 2015; and (v) the written or electronic communications between Harrison and EPA and ER regarding the nature and objectives of work on August 5, 2015.

THEREFORE:

The Court grants Utah's request for an order permitting Utah to introduce evidence of the Harrison's spoliation at trial. *See Browder*, 187 F.Supp.3d at 1295-96 ("sanctions include ... allowing the aggrieved party to question a witness in front of the jury about the missing evidence").

The Court denies the Utah's request for an order precluding Harrison from proffering other evidence that it was not invited to attend, or informed of the plans and action to take place on the day of the Gold King Mine Blowout. Precluding Harrison from putting on such evidence while allowing Utah to introduce evidence of Harrison's spoliation at trial would undermine the Court's interest in promoting accurate fact finding by the jury. *See Browder*, 187 F.Supp.3d at 1295-96 ("Sanctions for spoliation may also be designed to promote accurate fact finding by the court or jury").

The Court denies Utah's request for an adverse inference instruction or presumption that the spoliated evidence would have been unfavorable to Harrison. Utah has not persuaded the Court that Harrison "acted with the intent to deprive another party of the information's use in the

litigation." Fed. R. Civ. P. 37(e); *Turner*, 563 F.3d at 1149 ("if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case"). Harrison's spoliation appears to be the result of one "catastrophic" server event. While Utah contends that Harrison's explanation is "implausible," Utah did not appear at or attend the depositions of Harrison's Rule 30(b)(6) witness and Harrison's employee with the most information on the Gold King Mine project, witnesses who may have been able to address Utah's concerns about the implausibility of Harrison's explanation regarding the loss of the ESI.

The Court grants Utah's request for an order awarding Utah all reasonable attorneys' fees and costs associated with investigating Harrison's spoliation and preparing it Motion for sanctions. *See Browder*, 187 F.Supp.3d at 1295 ("spoliation sanctions include ... an award of attorney fees"). Utah incurred fees and costs it would not have incurred if there had been no spoliation of Harrison's ESI.

**IT IS ORDERED** that Plaintiff State of Utah's Motion for Sanctions due to Defendant Harrison Western Construction Corporation's Spoliation of Evidence, Doc. 1488, filed March 7, 2022, is **GRANTED in part.**

                                              **WILLIAM P. JOHNSON**
                                              **CHIEF UNITED STATES DISTRICT JUDGE**